**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA, ) Case No. 1:25-CR-00205 (JLS)(HKS)
Plaintiff, )
vs. ) November 3rd, 2025 10:35 a.m.
LAWRENCE COLBERT )
Defendant. )

**TRANSCRIPT OF DETENTION HEARING**
**BEFORE THE HONORABLE H. KENNETH SCHROEDER, JR.**
**UNITED STATES MAGISTRATE JUDGE**

APPEARANCES:

For the Plaintiff: MICHAEL DIGIACOMO
UNITED STATES ATTORNEY
BY: CASEY CHALBECK, ESQ.
GARRETT FITZSIMMONS, ESQ.
ASSISTANT UNITED STATES ATTORNEYS
138 Delaware Avenue
Buffalo, NY 14202

For the Defendant: FEDERAL PUBLIC DEFENDER'S OFFICE
BY: FRANK PASSAFIUME, ESQ.
ASSISTANT FEDERAL PUBLIC DEFENDER
300 Pearl Street, Suite 450
Buffalo, NY 14202

Probation Officer: BRIAN MAMIZUKA

Audio Recorder: LLANE GUIDOTTI

Transcriber: MEGAN E. PELKA, RPR
Robert H. Jackson US Courthouse
2 Niagara Square
Buffalo, NY 14202
(716) 229-0880

Proceedings recorded with electronic sound recording, transcript prepared with computer-aided transcription.

THE CLERK: This is United States vs. Lawrence Colvert, docket number 25-CR-205. This is the date set for appearance of counsel and detention hearing.

Assistant United States Attorneys Casey Chalbeck and Garrett Fitzsimmons appearing on behalf of the government. Assistant Federal Public Defender Frank Passafiume appearing with defendant, and United States Probation Officer Brian Mamizuka.

THE COURT: Good morning.

MR. PASSAFIUME: Good morning, Judge.

MS. CHALBECK: Good morning.

THE COURT: We're here for a detention hearing. Are we ready to proceed?

MR. PASSAFIUME: Judge, we're here for an attorney --

THE COURT: An attorney status?

MR. PASSAFIUME: Yes, Judge. So, I know Mr. Colvert has already spoken to probation. He provided that financial affidavit. He hasn't sworn to it yet, or anything like that, because he wasn't asking for assigned counsel. But he indicates now that he does not have money to retain an attorney. So, he is seeking appointment of counsel.

THE COURT: And is he agreeable to allowing me to place him under oath and question him about his financial circumstances?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right.

(The defendant was sworn at 10:38 a.m.)

THE COURT: You are now under oath. And because of that, you must answer each and every one of my questions, not only truthfully, but also completely. Because if you should knowingly and/or intentionally answer any question less than truthfully by withholding material facts or information, that can result in your being charged with the additional crime or crimes of perjury and/or making a false statement. Do you understand?

THE DEFENDANT: Yes.

THE COURT: I show you a financial affidavit for one, Lawrence Colvert, and I ask you if that's your signature that appears at the bottom of the page.

THE DEFENDANT: Yes.

THE COURT: Did you read this affidavit before you signed it?

MR. PASSAFIUME: I don't think that affidavit accurately reflects Mr. Colvert's finances at this stage, so we could do another one if you want, Judge, but --

THE COURT: Two sets of books? Well, government counsel is present, so she's aware of what's going on.

MR. PASSAFIUME: I apologize.

MS. CHALBECK: Judge, after Mr. Passafiume and Mr. Colvert are done --

THE COURT: I'm sorry?

MS. CHALBECK: After Mr. Passafiume and Mr. Colvert are done reviewing that financial affidavit, I would like to make a little bit of a record on this issue.

THE COURT: Certainly.

MS. CHALBECK: Thank you.

(An off-the-record discussion was held.)

THE COURT: All right. Ms. Chalbeck, you wanted to make a record of something?

MS. CHALBECK: Yes, Judge.

The government previously moved orally for disclosure of Mr. Colvert's initial financial affidavit. We would renew that motion at this time, given that Mr. Colvert has represented or, I believe, counsel for Mr. Colvert has represented, that that initial affidavit may not be accurate; especially in light of his motion for appointment of the Federal Public Defender's Office for which he would have to be financially entitled to their representation.

My understanding, after Your Honor initially reviewed that first affidavit, was that Mr. Colvert did not qualify for the appointment of the Federal Public Defender Office's services or the services of CJA counsel. So, to the extent that Mr. Colvert may have just submitted a second revised affidavit reflecting a significantly reduced net worth or income, I think that that rises to a colorable claim that that first

affidavit may not have been accurate.

I also have information, Judge, that we have acquired through the course of the investigation, the ongoing investigation into Mr. Colvert, that leads me, as an officer of the court, to doubt that Mr. Colvert is accurately representing the true state of his finances insofar as, in the second affidavit, he may be asking for the appointment of counsel.

Specifically -- and I make this -- I want to be extremely clear, due to my perceived professional duty to the Court, and to the taxpayers of the Western District of New York, but in jail calls, Mr. Colvert has repeatedly referenced having plenty of money to hire an attorney, but he claims to others that his accounts are frozen.

I don't have any information on the law enforcement side as to why those accounts would be frozen. To the best of my knowledge, law enforcement has not asked any bank, either M&T or KeyBank with which Mr. Colvert is known to have accounts, to freeze any of the accounts that he may have.

And so, insofar as Mr. Colvert may be representing either that he does not have bank accounts, that those bank accounts have insufficient funds, his representations on jail calls to others would seem to indicate that that's not entirely accurate.

THE COURT: Llane, this speaker doesn't seem to be

working. Do you want to say something on your microphone now, Ms. Chalbeck?

MS. CHALBECK: Yes, Judge. I apologize.

THE COURT: That's better. Thank you.

MS. CHALBECK: Okay.

THE COURT: I'm just testing my speaker.

Mr. Passafiume, it would appear that, based on what has just been proffered by the government and what has been submitted to me by way of a second financial affidavit by Mr. Colvert, that we have a very serious issue, and it's a question of whether Mr. Lawrence Colvert wants to go forward with my examining him at this time about his financial circumstances or whether the matter has to be rethought.

MR. PASSAFIUME: Judge, what I'll say is this. He never swore to the first financial affidavit. We never went down that route.

THE COURT: That may be, but the fact that he submitted an affidavit, or at least an affidavit was filled out, with the understanding it was going to be supplied to the Court, is certainly a submission of a document to the Court.

MR. PASSAFIUME: Sure, Judge. And I wasn't part of that. I don't necessarily need to be part of that process, so I don't know how the financial affidavit got to Your Honor. The bottom line though, is, it's about whether Mr. Colvert has money or not. And whether he is embellishing and lying to

family members on the phone and saying that accounts are frozen, obviously, if those accounts or exist, and they were, indeed, frozen, the government would know about it.

So, he's exaggerating, in my opinion, his finances and his financial situation to family members and he, perhaps, does not have that money. I don't think he does. He's telling me he does not. And I think he embellished this stuff in talking to Probation because it may have looked better like he had a job, he had income, things like that, when, indeed, he didn't have that money.

So, as far as qualifying for the Public Defender's Office, he is going to stick with that second financial affidavit. He is still seeking appointment of counsel and, again, if there's something more that the government wants to, kind of, pry into, I guess I don't know what it could be. These accounts don't exist. They're not frozen. He doesn't have money.

MS. CHALBECK: Judge, may I respond to that?

THE COURT: Certainly.

MS. CHALBECK: Just on the issue of what the government does and does not know. There are outstanding forms of legal process that the government is awaiting. And so, we don't have an accurate or complete picture of the defendant's financial circumstances other than what we've acquired prior to this indictment. We do know that he did receive a State Farm settlement. That is accurate -- in the

sum of several tens of thousands of dollars. That is reflected on his Pretrial Services report, his bail report. He listed $50,000. I don't remember, at this time as I sit here today, what that sum was of the settlement. My memory is that it was slightly more than $50,000, but in any event, it was in the same ballpark as what he represented.

I would note further, Judge, that it is a crime under Title 18, United States Code, Section 1001 to give false statement to the Probation Office. And those false statements are arguably material, I think as counsel for Mr. Colvert just eluded to, when they're done in service to fraudulently induce the Probation Office, and by extension the Court, to release the defendant pending trial. That is the definition of a material false statement.

And so, here, we have a defendant who, not just to his family members as you just heard from Mr. Passafiume, but to the US Probation Office, an arm of the Court, saying that he has a 2012 BMW valued at $55,000, a 2018 Dodge Challenger valued at $15,000, a 2013 Ford F-150 valued at $6,000, a 2013 Nissan Sentra valued at $3,000, that $50,000 State Farm settlement that I eluded to earlier, stocks, stocks, a brokerage account, evidently, in the value of $9,000 and then a business account with $35,000.

Those are not embellishments to family members, Judge. Those are lies -- apparently, now, he's confessing to them --

to the Court. And, as the government further noted at the outset of this, we don't have a complete picture. So, we don't actually know if he's lying to you now or if he was lying to Probation and, by extension, the Court when he was first arraigned.

Judge, I would ask that if Your Honor is considering appointing him counsel today, the government be given an opportunity to inspect those affidavits in the presence of the Court and in the presence of defense counsel. Perhaps we could take a brief recess to accomplish that inspection, but that would be our request.

THE COURT: Just so the record is clear, because we're venturing into, what I consider to be, very serious territory.

On October 27th, 2025, the defendant appeared before me with Mr. Passafiume. And, at that time, it had been indicated to me that the defendant had still not hired an attorney, even though he had previously indicated he was going to take action to do that. And I directed him, on October 27th, 2025, to do that diligently. As a result, I adjourned the detention hearing until today, November 3rd, 2025.

The Court sua sponte raised the issue of whether the defendant would qualify financially to the assignment of counsel back on October 17th, 2025, when I was given the financial affidavit for, one, Lawrence Colvert, dated by

execution date October 17th, 2025 with the signature, presumably of the defendant, Lawrence Colvert. And my review of that financial affidavit at that time caused the Court to state, for the record, that the contents of that financial affidavit caused me to conclude that the defendant would not qualify for assignment of counsel.

More specifically, in that October 17, 2025 affidavit, he listed that he has monthly income of $3,500 from Covert Enterprises, LLC; that he has ownership of several vehicles, that's a quote, having a value of $80,000; that he owned stocks having a value of $9,000; and that he had $30,000 or $50,000, I'm not sure which, if that's a five or a three, in a checking account; and had $20,000 in a savings account; and $35,000 in a business account, and that he had monthly expenses of; rent, $1,300; groceries, $300; vehicle, $400; auto insurance, $300.

That was what was given to me to October 17th, 2025, which caused me to conclude that, initially, the contents of that financial affidavit indicated that the defendant was not financially unable to hire counsel and I directed him to do so.

Today, November the 3rd, I now am told that there's been a change of financial circumstances, and a second financial affidavit had been submitted. And that second financial affidavit indicates the defendant has employment of $5,000 a

month, rather than $3,500; but that, as far as ownership of vehicles, cars or trucks, he lists a 2018 Dodge Challenger having a value of $15,000. And I'm not sure whether -- he has also indicated some other vehicle -- if that's a $10,000 figure or a zero figure. For stocks and bonds, he says zero. For other properties, he says, zero.

For his monthly expenses, his monthly expenses have now changed where he says he has groceries expenses of $400 a month when, back on October 17th, they were $300 a month. He indicates that he had utility expenses on the November 3rd, 2025 of $200, and there were no utilities listed on the October 17th, 2025 affidavit.

He indicates he's got credit card debt of $5,000 on the November 3rd, '25 affidavit, but there's no listing of credit card debt on the October 17th, '25 financial affidavit. He indicates he's got monthly expenses on the November 3rd, '25 affidavit for cars, trucks, and vehicles of $600. On the October 17, 2025 affidavit, he lists a vehicle expense of $400 a month.

On the November 3rd, 2025 affidavit, he indicates auto insurance of $500 a month. On the October 17th, 2025 affidavit, he lists auto insurance of $300 a month.

On the November 3rd, 2025 affidavit, he indicates he has loans with a monthly expense of $100, with a total debt of $3,000 for dental expenses. On the October 17th, 2025

affidavit, there's no such listing of that kind of indebtedness.

So, since the defendant had been detained since October 17th, 2025, I would presume that he was not in a position to directly do something with these assets of $80,000 and several vehicles; $9,000 in stocks; $50,000 or $30,000 in a checking account; $20,000 in savings; and $35,000 in business accounts; that there's a real disparity between two alleged financial affidavits just a few weeks apart, October 17th, 2025 and November 3rd, 2025, which causes me to conclude that I'm going to have a hard time finding credibility in determining the financial circumstances of the defendant at this stage when I take into further account what the government had proffered.

So, I'm open so suggestions, Mr. Passafiume, if you have any.

MR. PASSAFIUME: Judge --

THE COURT: I understand you're just the receiver of information.

MR. PASSAFIUME: Yeah.

THE COURT: I don't know how else I can communicate it for making a record.

MR. PASSAFIUME: No, no. That's perfect, Judge. And I understand where everybody's coming from, you know? I would just I would ask -- we're kind of spinning our wheels here. I would ask to be assigned, based on the new financial

affidavit. And, obviously, if the government wants to investigate and charge Mr. Colvert with something else in the future, it's their prerogative, and they could do it. I know it doesn't answer the Court's question because, you know, you're assigning me based on two different sets of facts here, but I would ask that you use the second one that was done with me with Mr. Colvert and be assigned based on that. And then, whatever the government wants to do with the other stuff, you know, they can do.

THE COURT: Well, I think I have a better solution as far as I'm concerned.

MR. PASSAFIUME: Okay.

THE COURT: And that is, we adjourn this proceeding for a week, give the government time to contact those banks and get more detailed information.

And if the defendant wants to assist his own situation of obtaining assigned counsel, he, through you, Mr. Passafiume, can supply more detailed information to the government as to which banks these accounts of $80,000, $9,000 stocks, 50 or $30,000 checking, and $20,000 savings and $35,000 business accounts, assuming they exist, what institution they're held in or were held in, so that we can expedite the government's checking that out.

MS. CHALBECK: Judge in that vein, the government would ask Your Honor to order this defendant not to transfer

those funds to any other account as we pursue this investigation.

Related to that, Judge, or at least related to the question of financial discovery for this defendant, I think, as Your Honor knows, legal process can sometimes take some time to accomplish. And we have forms of legal process that are outstanding with at least one bank that I can think of right now.

If -- I'm trying to be mindful of the defendant's right not to self-incriminate, and I think I heard Your Honor suggest that the defendant, through Mr. Passafiume, share banking information with the government. The government would consent, in order to protect his Fifth Amendment privilege and not put Mr. Passafiume in a, maybe, a directly uncomfortable position with the government, if the defendant gave those records to the Court, we, I am confident, will be able to discover them on our own in due time, but I wouldn't want to inject further delay into this case by putting this issue on the fulfilment of that outstanding legal process if a more efficient and expeditious option were available for counsel to communicate it directly with the Court.

THE COURT: What kind of record would they be giving me?

MS. CHALBECK: I assume Mr. Colvert has access to his bank accounts and could produce statements.

THE COURT: I was thinking if you knew the names of the banks with the accounts, and your subpoena power, you could just go to those banks.

MS. CHALBECK: That's what we're doing separately from all of this, Judge.

THE COURT: Right. I don't want to be in the role of an investigator.

MS. CHALBECK: Okay.

THE COURT: My role is to be neutral, but my role also is to make sure that frauds are not committed upon this Court or the taxpayers of this country.

MS. CHALBECK: In that case, Judge, we would rest then with just our request that the Court order this defendant not to directly or indirectly cause the transfer of any funds in any of his accounts to another account.

THE COURT: I'm willing to do that.

MS. CHALBECK: Thank you, Judge.

THE COURT: Do you have any objection to that, Mr. Passafiume?

MR. PASSAFIUME: No, Judge.

THE COURT: All right. Mr. Lawrence Colvert, I'm hereby ordering you to refrain, and to be prohibited, from attempting, in any way, directly or indirectly, by any form of communication with any third party of any nature, such as friends, relatives, whomever, from attempting to transfer or

dispose of, or hide, any of the assets that were listed in your financial affidavit dated October 17th, 2025; more specifically, the several vehicles, having a total value of $80,000; the stocks having value of $9,000; the checking account containing either $50,000 or $30,000, depending on what that first number is; the savings account containing $20,000 and the business accounts containing $35,000, and any other assets that you have ownership interest in, regardless of where they may be located and in what form.

If you do attempt to either hide or transfer or dispose of, in some way, those assets that I've described, I'm going to take that into account as far as the detention hearing is concerned as well as any further legal action the government might undertake. But in order to, at least, get some clarification now as to what I consider to be a serious discrepancy on the financial statements submitted by the defendant, Lawrence Colvert, it's the finding of this Court sua sponte that the interest of justice require that this matter be adjourned for at least one week. So we'll reschedule it for November the 10th, 2025 at 10:30.

MR. PASSAFIUME: Thank you, Judge.

THE COURT: In the mean time, the defendant, Lawrence Colvert, is continued to be remanded to the custody of the US Marshals Service until further order of the Court and the time is excluded, for purposes of the Speedy Trial Act, and any

other statutory time requirements that might be applicable pursuant to, and in accordance with, the provisions contained in Title 18 of the United States Code, Section 3161(h)(7)(A); 3161(h)(7)(B)(iv), as well as the provisions contain in Title 18 of the United States Code, Section 3161(h)(1)(D), that being the fact that the government has made a motion; that is, the motion to have the defendant detained, causing the provisions in that section to come into operation, and the Speedy Trial clock automatically stopped upon the making of that motions and will remain stopped until that motion has been resolved.

And Ms. Chalbeck, will you submit an order of exclusion to the effect as I've described?

MS. CHALBECK: Yes, Judge. I would just further note for the record that, insofar as the government acquires evidence, we will share that with the Court and, I guess, with Mr. Passafiume too bearing on this issue of the defendant's financial eligibility.

THE COURT: Right. I had planned on having a record made.

MS. CHALBECK: Yes.

THE COURT: All right. Anything further?

MR. PASSAFIUME: No, Judge. Thank you.

MS. CHALBECK: Not from the government. Thank you, Your Honor.

THE COURT: Thank you.

(Proceedings concluded at 11:11 a.m. p.m.)

CERTIFICATE OF TRANSCRIBER

In accordance with 28, USC, 753(b), I certify that this is a true and correct record of the proceedings held in the United States District Court for the Western District of New York before Honorable Magistrate Judge H. Kenneth Schroeder, Jr., on November 3rd, 2025.

s/ Megan E. Pelka, RPR

Megan E. Pelka, RPR

Transcriber