IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK



UNITED STATES DISTRICT COURT
FILED
JUN 1 0 2026
ANDREW W. MOELLER, CLERK
WESTERN DISTRICT OF NY

UNITED STATES OF AMERICA,

v.                                                        25-CR-205

ANDRELL MONTGOMERY,
a/k/a Spliff,

                    Defendant.

## PLEA AGREEMENT

The defendant, ANDRELL MONTGOMERY, a/k/a Spliff, and the United States
Attorney for the Western District of New York (hereinafter "the government") hereby enter
into a plea agreement with the terms and conditions as set out below.

## I.    THE PLEA AND POSSIBLE SENTENCE

1.       The defendant agrees to plead guilty to Count 18 of the Superseding
Indictment, which charges a violation of Title 18, United States Code, Section 1951(a)
(Conspiracy to Commit Hobbs Act Robbery), for which the maximum possible sentence is a
term of imprisonment of 20 years, a fine of $250,000, a mandatory $100 special assessment,
and a term of supervised release of 3 years. The defendant understands that the penalties set
forth in this paragraph are the minimum and maximum penalties that can be imposed by the
Court at sentencing.

2. The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 2 years per revocation without credit for time previously served on supervised release. As a consequence, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximums set forth in ¶ 1 of this agreement.

## II. ELEMENTS AND FACTUAL BASIS

3. The defendant understands the nature of the offenses set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

### Count 18 – 18 U.S.C. § 1951(a) (Hobbs Act Robbery Conspiracy)

a. First, the defendant knowingly and willfully agreed with others to obtain property from another person against that person's will;

b. Second, the defendant agreed to do so by means of actual or threatened force, violence, or fear of injury, immediate or future, to the person, the person's property, or property in the person's custody and possession; and

c. Third, as a result of the defendant's agreement and actions, interstate commerce, or an item moving in interstate commerce, was actually or potentially delayed, obstructed, or affected in any way or degree.

## FACTUAL BASIS

4.    The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

a.  Between in or about February 2024, and in or about December 2024, the exact dates being unknown, in the Western District of New York, the defendant, ANDRELL MONTGOMERY, a/k/a Spliff ("MONTGOMERY"), did knowingly and intentionally conspire with others, including Lawrence Colbert ("Colbert"), to rob prospective commercial sex customers of U.S. currency against the sex customer's will, by means of actual and threatened force, violence, and fear of injury, immediate and future.

b.  Specifically, co-defendant Colbert recruited MONTGOMERY to participate as his partner in a robbery enterprise that Colbert headed. As part of the conspiracy, Colbert and MONTGOMERY caused sexually provocative advertisements of female members of the conspiracy to be posted on commercial sex websites, such as Megapersonals.eu and Skipthegames.eu.

c.  Minor Victim 3, an individual known to the U.S. Attorney's Office, was one of the individuals Colbert and MONTGOMERY caused to be advertised. The advertisements featured sexually provocative photographs of Minor Victim 3 and identified the kinds of commercial sex services that Minor Victim 3 would perform, the amounts of money she would charge, her general location, and the telephone number prospective customers should contact to arrange commercial sex transactions. At the time Colbert began advertising Minor Victim 3, Minor Victim 3 was 16 years old. MONTGOMERY admits that he shared sexually provocative images of Minor Victim 3 with Colbert to be used in advertisements. MONTGOMERY further admits that he had a reasonable opportunity to observe Minor Victim 3 in person during the conspiracy, and that he knew Minor Victim 3 was underage during his involvement in the conspiracy.

d.  It was part of the conspiracy that prospective commercial sex customers contacted members of the conspiracy, including

Colbert and Minor Victim 3, to arrange commercial sex appointments. Colbert directed or caused other co-conspirators to direct, customers to various hotels and motels engaged in interstate commerce within the Western District of New York.

e. MONTGOMERY and his co-conspirators agreed that when prospective customers would arrive at their appointments, the customers would transmit U.S. currency to the female co-conspirators, including Minor Victim 3, via cash or a monetary transfer application, such as CashApp, for the agreed-upon commercial sex services.

f. It was part of the conspiracy that the female co-conspirators, including Minor Victim 3, directed the customer to undress until he was naked or nearly naked, and then to lay on the bed for a sensual massage. The female co-conspirators, including Minor Victim 3, would assist the customer in undressing, resulting in Minor Victim 3 touching naked customers. MONTGOMERY admits that Minor Victim 3's sensual touching of the prospective commercial sex customers was an erotic performance designed to disarm, arouse, and compromise the prospective commercial sex customers.

g. Once the commercial sex customer was naked, aroused, and vulnerable, it was part of the conspiracy that MONTGOMERY and Colbert would enter the room, and that Colbert would sometimes brandish a weapon, and that MONTGOMERY and Colbert would implicitly or explicitly threaten the commercial sex customer with bodily injury or harm and forcibly obtain additional U.S. currency.

h. For example, on or about June 22, 2024, MONTGOMERY and Colbert entered the room of a Motel 6 located at 5245 Camp Road, Hamburg, New York, to rob a prospective commercial sex customer, Victim D.I., of U.S. currency. MONTGOMERY admits that Victim D.I. was vulnerable because he was undressed, aroused, and had solicited commercial sex. MONTGOMERY and Colbert entered the room wearing ski masks that obscured their faces, demanded that Victim D.I. provide them with U.S. currency, and forcibly took U.S. currency from Victim D.I. During the robbery, Colbert brandished a pepper ball gun to place Victim

D.I. in fear of his safety. MONTGOMERY admits that the pepper ball gun was a dangerous weapon and that it was a reasonably foreseeable part of the conspiracy that Colbert would brandish and possess such dangerous weapons.

i. Similarly, on or about June 27, 2024, MONTGOMERY, Colbert, and others agreed to cause the advertisement of Minor Victim 3 on a commercial sex website to induce prospective commercial sex customers to enter their robbery trap. MONTGOMERY admits that he rented a hotel room at the Red Roof Inn located at 146 Maple Drive, Bowmansville, New York to serve as the location of the planned robberies. MONTGOMERY admits that it was part of the conspiracy that Minor Victim 3 would text prospective customers that she would provide them with vaginal intercourse to induce them into meeting Minor Victim 3, at which point MONTGOMERY and Colbert planned to rob the customer. MONTGOMERY further admits that local law enforcement foiled the planned robbery when they performed a sting operation against MONTGOMERY, Colbert, and the other co-conspirators.

j. MONTGOMERY admits that the co-conspirators, including MONTGOMERY, divided the money they robbed from commercial sex customers amongst themselves.

k. MONTGOMERY admits that he would sometimes direct and organize Minor Victim 3's actions in the conspiracy.

l. MONTGOMERY further admits that he conspired with Colbert to recruit Minor Victim 2, an individual known to the U.S. Attorney's Office, as a participant in the scheme.

m. MONTGOMERY admits and agrees that the above incidents obstructed, delayed, and affected commerce, and the movement of articles and commodities in commerce.

## III.    SENTENCING GUIDELINES

5. The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

## BASE OFFENSE LEVEL

6. The government and the defendant agree that Guidelines § 2B3.1(a) applies to the offenses of conviction and provide for a base offense level of **20**.

## SPECIFIC OFFENSE CHARACTERISTICS
## USSG CHAPTER 2 ADJUSTMENTS

7. The government and the defendant agree that the following specific offense characteristics apply:

    a. The 3-level increase pursuant to Guidelines § 2B3.1(b)(2)(E) (dangerous weapon was brandished or possessed).

## U.S.S.G. CHAPTER 3 ADJUSTMENTS

8. The government and the defendant agree that the following specific offense characteristics apply:

    a. The 2-level increase pursuant to Guidelines § 3A1.1(b)(1) (vulnerable victim);

    b. The 2-level increase pursuant to Guidelines § 3B1.4 (using a minor to commit a crime); and

    c. The 4-level increase pursuant to Guidelines § 3B1.1(a) (organizer or leader in criminal activity involving 5 or more participants or was otherwise extensive).

## ADJUSTED OFFENSE LEVEL

9. Based on, it is the understanding of the government and the defendant that the defendant's adjusted offense level is **31**.

## ACCEPTANCE OF RESPONSIBILITY

10. At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level decrease of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level decrease of Guidelines § 3E1.1(b), which would result in a total offense level of **28**.

## CRIMINAL HISTORY CATEGORY

11. It is the understanding of the government and the defendant that the defendant's criminal history category is **I**. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

12. It is the understanding of the government and the defendant that with a total offense level of **28**, and criminal history category of **I**, the defendant's sentencing range would be a term of imprisonment of **78 to 97 months**, a fine of **$25,000 to $250,000**, and a period of supervised release of not more than **3 years**.

13. The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above. The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range.

This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

14. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

15. In the event the Court contemplates any Guidelines adjustments, departures, or calculations different from those agreed to by the parties above, the parties reserve the right to answer any inquiries by the Court concerning the same.

## IV. STATUTE OF LIMITATIONS

16. In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty pleas or vacating of the convictions becomes final.

## V. IMMIGRATION CONSEQUENCES

17. The defendant represents that the defendant is a citizen of the United States. However, if the defendant is a naturalized citizen of the United States, the defendant understands that pleading guilty may result in denaturalization and removal. If the defendant is not a citizen of the United States, the defendant understands that, if convicted, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant understands that any effect that the defendant's conviction in this action will have upon the defendant's immigration status, that is, possible removal, denaturalization, or other immigration consequence, is the subject of a separate proceeding. The defendant has had an opportunity to fully determine what the consequences of the defendant's conviction may be on the defendant's immigration status, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the guilty plea may entail.

18. The defendant understands that the defendant is bound by the guilty plea regardless of the immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to the guilty plea and to the sentence based on those consequences, and agrees not to seek to withdraw the guilty plea or to file a direct appeal or any kind of collateral attack challenging the guilty plea, conviction, or sentence based on the immigration

consequences of the guilty plea, conviction, or sentence. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in the appropriate forum.

## VI.    GOVERNMENT RIGHTS AND OBLIGATIONS

19.    The defendant understands that the government has reserved the right to:

a. provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c. advocate for a specific sentence consistent with the terms of this agreement including the amount of a fine and the method of payment;

d. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor; and

e. oppose any application for a downward departure and/or sentence outside the Guidelines range made by the defendant.

20.    At sentencing, the government will move to dismiss the open counts of the Superseding Indictment in this action as against this defendant.

## VII.  APPEAL RIGHTS

21.  The defendant knowingly waives the right to appeal and collaterally attack the defendant's conviction in any proceeding, including, but not limited to, an application under Title 28, United States Code, Section 2255, and/or Section 2241. In addition to any other claims the defendant might raise, the defendant knowingly waives the right to challenge the conviction based on: (1) any non-jurisdictional defects in the proceedings prior to entry of the plea; (2) a claim that the statute to which the defendant is pleading guilty is unconstitutional, (except in the event that, in the future, the Supreme Court finds the statute in question unconstitutional); and (3) a claim that the conduct admitted in the Factual Basis of this plea agreement does not fall within the scope of the statute to which the defendant is pleading guilty.

22.  The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than a term of imprisonment of **78 to 97 months**, a fine of **$25,000 to $250,000**, and a period of supervised release of not more than **3 years**, notwithstanding the manner in which the Court determines the sentence. The defendant further knowingly waives the right to appeal and/or collaterally attack any condition of supervised release imposed by the Court for which the defendant had notice, including from a recommendation by the Probation Office in the Presentence Investigation Report, and did not object. In the event of an appeal of the defendant's sentence by the

government, the defendant reserves the right to argue the correctness of the defendant's sentence.

23. The defendant understands that by agreeing not to collaterally attack the conviction or sentence in any proceeding, including, but not limited to, an application under Title 28, United States Code, Section 2255 and/or Section 2241, the defendant is waiving the right to challenge the conviction or sentence in the event that, in the future, the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

24. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than a term of imprisonment of **78 to 97 months**, a fine of **$25,000 to $250,000**, and a period of supervised release of not more than **3 years**, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

25. By entering this plea of guilty, the defendant waives any and all right to withdraw the defendant's plea or to attack the defendant's conviction or sentence, either on direct appeal or collaterally, on the ground that the government has failed to produce any discovery material, (other than material the government was required to produce under *Brady v. Maryland* and its progeny), that has not already been produced as of the date of the signing of this Agreement.

26. Notwithstanding the foregoing, nothing in the Appeal Rights section of this plea agreement shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise.

## VIII. TOTAL AGREEMENT AND AFFIRMATIONS

27. This plea agreement represents the total agreement between the defendant, ANDRELL MONTGOMERY, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

MICHAEL DIGIACOMO
United States Attorney
Western District of New York

BY: _____
Casey L. Chalbeck
Assistant United States Attorney

Dated: June 10, 2026

I have read this agreement, which consists of pages 1 through 14 I have had a full opportunity to discuss this agreement with my attorney, M. Kirk Okay, Esq. I agree that it represents the total agreement reached between me and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____
ANDRELL MONTGOMERY
Defendant

Dated: June 10, 2026

_____
M. KIRK OKAY
Attorney for the Defendant

Dated: June 6, 2026

14