UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

LAWRENCE COLBERT, et al.,

Defendants.

No. 1:25-cr-00205-JLS-HKS

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT LAWRENCE COLBERT'S MOTION TO UNSEAL THREE STATE COURT CASES AND FOR PRETRIAL RULE 17(c) SUBPOENAS

**SAMUEL L. YELLEN,**
**ATTORNEY AT LAW, PLLC**
1 Seneca St., 29th Fl.
Buffalo, NY 14203
(716) 304-2820
sam@yellenlegal.com

Samuel L. Yellen, Esq.
*Attorney for Defendant Lawrence Colbert*

Dated: July 31, 2026
Buffalo, NY

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ........ 1

II. THE SUBPOENAS TO THE ERIE COUNTY DISTRICT ATTORNEY AND THE NIAGARA FALLS POLICE DEPARTMENT SHOULD ISSUE ON THE GOVERNMENT'S OWN ACCOUNT ........ 2

III. THE GOVERNMENT'S POSSESSION OF THE THREE POLICE FILES SUPPORTS ISSUANCE, NOT DENIAL ........ 5

A. A partial production and a late schedule do not make the withheld remainder "otherwise procurable" ........ 5

B. Rule 17 subpoenas may reach evidence beyond Rule 16 material where the material sought is relevant to other pretrial issues ........ 6

C. The government's certifications cannot be self-executing ........ 7

D. The government's footnote 7's unanswered question resolves the rest ........ 8

IV. RULE 17(h) CHANNELS THE TIMING OF WITNESS-STATEMENT PRODUCTION; IT DOES NOT PLACE THESE RECORDS BEYOND REACH ........ 11

A. Rule 17(h) governs statements in the parties' possession, and the Court should so hold . 11

B. In any event, the government has not shown that the subpoenas call for "statements" at all 12

V. THE SUBPOENAS SATISFY NIXON ........ 12

A. The records are relevant to the charges, not merely to motions ........ 13

B. The records are admissible, and not for impeachment alone ........ 14

C. The subpoenas are specific, and the government's overbreadth objections go to scope, not issuance ........ 16

VI. THE UNSEALING MOTION STANDS EFFECTIVELY UNOPPOSED ........ 17

VII. MINOR VICTIM 2'S RESPONSE DOES NOT ADDRESS ALL CHARGES IN THE SUPERSEDING INDICTMENT ........ 18

VIII. CONCLUSION ........ 20

# TABLE OF AUTHORITIES

## Cases

*Abdell v. City of New York*, No. 05 Civ. 8453 (KMK)(JCF), 2006 WL 2664313 (S.D.N.Y. Sep. 14, 2006) ........ 16

*Brady v. Maryland*, 373 U.S. 83 (1963) ........ 1, 2, 5, 6, 8, 10, 20

*Burbar v. Inc. Vill. of Garden City*, 303 F.R.D. 9 (E.D.N.Y. 2014) ........ 16

*Conte v. County of Nassau*, No. CV 06-4746 (JFB)(ETB), 2009 WL 1362784 (E.D.N.Y. May 15, 2009) ........ 17

*Crosby v. City of New York*, 269 F.R.D. 267 (S.D.N.Y. 2010) ........ 16, 18

*Franks v. Delaware*, 438 U.S. 154 (1978) ........ 6

*Goldberg v. United States*, 425 U.S. 94 (1976) ........ 12

*Hickman v. Taylor*, 329 U.S. 495 (1947) ........ 16

*Howard v. City of Rochester*, 758 F. Supp. 3d 109 (W.D.N.Y. 2024) ........ 18

*Kaufman v. City of New York*, No. 98 Civ. 2648 (MJL)(KNF), 1999 WL 239698 (S.D.N.Y. Apr. 22, 1999) ........ 17

*Kyles v. Whitley*, 514 U.S. 419 (1995) ........ 8, 9

*Palermo v. United States*, 360 U.S. 343 (1959) ........ 12

*Pennsylvania v. Ritchie*, 480 U.S. 39 (1987) ........ 20

*Schomburg v. N.Y. City Police Dep't*, 298 F.R.D. 138 (S.D.N.Y. 2014) ........ 18

*United States v. Alexander*, No. 24-CR-676 (VEC), 2026 WL 112113 (S.D.N.Y. Jan. 15, 2026) ........ 15

*United States v. Almonte*, 956 F.2d 27 (2d Cir. 1992) ........ 12

*United States v. Antone*, 603 F.2d 566 (5th Cir. 1979) ........ 9

*United States v. Bergstein*, 788 F. App'x 742 (2d Cir. 2019) (summary order) ........ 13

*United States v. Berrios*, 501 F.2d 1207 (2d Cir. 1974) ........ 7, 14

*United States v. Blackwood*, 456 F.2d 526 (2d Cir. 1972) ........ 14

*United States v. Ceballo*, No. 03 Cr. 283 (SWK), 2003 WL 21961123 (S.D.N.Y. Aug. 18, 2003) ........ 17

*United States v. Chavez*, No. 15-cr-00285, 2020 WL 109703 (N.D. Cal. Jan. 9, 2020) ........ 12

*United States v. Cherry*, 876 F. Supp. 547 (S.D.N.Y. 1995) ........ 9, 15

*United States v. Cole*, No. 19 Cr. 869 (ER), 2021 WL 912425 (S.D.N.Y. Mar. 10, 2021) ........ 5, 14, 15

*United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001) ........ 5, 8

*United States v. Goldstein*, No. 21-CR-550 (DC), 2023 WL 3662971 (E.D.N.Y. May 25, 2023) ........ 11, 12

*United States v. Goldstein*, No. 24-556, 2026 WL 603803 (2d Cir. Mar. 4, 2026) ........ 12

*United States v. Green*, 144 F.R.D. 631 (W.D.N.Y. 1992) ........ 3

*United States v. Guerrerio*, 670 F. Supp. 1215 (S.D.N.Y. 1987) ........ 3

*United States v. Gupta*, 848 F. Supp. 2d 491 (S.D.N.Y. 2012) ........ 6

*United States v. Hussain*, No. 16-cr-00462, 2018 WL 1091083 (N.D. Cal. Feb. 28, 2018) ........ 12

*United States v. Hwa*, No. 18-CR-538 (MKB), 2021 WL 11723583 (E.D.N.Y. Sep. 3, 2021), *aff'd*, 161 F.4th 127 (2d Cir. 2025) ........ 3

*United States v. Jabar*, No. 9-CR-170V, 2016 WL 8671207 (W.D.N.Y. July 22, 2016) ........ 4, 7

*United States v. Kiszewski*, 877 F.2d 210 (2d Cir. 1989) ........ 7, 11, 20

*United States v. Klein*, No. 16-CR-442 (JMA), 2017 WL 782326 (E.D.N.Y. Feb. 28, 2017) ........ 8

*United States v. Koschtschuk*, No. 09-CR-0096(S)(M), 2011 WL 1549464 (W.D.N.Y. Apr. 22, 2011) ........ 6, 7

*United States v. Leung*, 40 F.3d 577 (2d Cir. 1994) ........ 7

*United States v. Louis*, No. 04 Cr. 203, 2005 WL 180885 (S.D.N.Y. Jan. 27, 2005) ........ 14

*United States v. Martoma*, 990 F. Supp. 2d 458 (S.D.N.Y. 2014) ........ 6

*United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511 (S.D.N.Y. 2013) ........ 9

*United States v. Nachamie*, 91 F. Supp. 2d 552 (S.D.N.Y. 2000) ........ 4

*United States v. Nixon*, 418 U.S. 683 (1974) ........ 2, 3, 12, 13, 14, 15, 16

*United States v. Oates*, 560 F.2d 45 (2d Cir. 1977) ........ 14

*United States v. Paternina-Vergara*, 749 F.2d 993 (2d Cir. 1984) ........ 10

*United States v. Percevault*, 490 F.2d 126 (2d Cir. 1974) ........ 6

*United States v. Rajaratnam*, 753 F. Supp. 2d 317 (S.D.N.Y. 2011) ........ 13, 16

*United States v. Ray*, 337 F.R.D. 561 (S.D.N.Y. 2020) ........ 16

*United States v. Rittweger*, 524 F.3d 171 (2d Cir. 2008) ........ 6

*United States v. Ruth*, 495 F. Supp. 3d 161 (W.D.N.Y. 2020) ........ 3, 4, 10

*United States v. Sawinski*, No. 00 CR. 499, 2000 WL 1702032 (S.D.N.Y. Nov. 14, 2000) ........ 16

*United States v. Scotti*, 47 F.3d 1237 (2d Cir. 1995) ........ 12

*United States v. Shakur*, 543 F. Supp. 1059 (S.D.N.Y. 1982) ........ 3, 10

*United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2254538 (S.D.N.Y. May 17, 2018) ........ 14, 15, 16

*United States v. Smith*, 521 F.2d 957 (D.C. Cir. 1975) ........ 14

*United States v. Soliman*, No. 06CR236A, 2009 WL 1531569 (W.D.N.Y. May 29, 2009) 13, 14

*United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006)....................10

*United States v. Tadros*, 310 F.3d 999 (7th Cir. 2002)....................10

*United States v. Thomas*, 981 F. Supp. 2d 229 (S.D.N.Y. 2013)....................10

*United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008)....................13

*United States v. Upton*, 856 F. Supp. 727 (E.D.N.Y. 1994)....................3, 10

*United States v. Vasquez*, 258 F.R.D. 68 (E.D.N.Y. 2009)....................12, 16

*United States v. Weigand*, 520 F. Supp. 3d 609 (S.D.N.Y. 2021)....................13, 16

*United States v. Yudong Zhu*, No. 13 CR. 761, 2014 WL 5366107 (S.D.N.Y. Oct. 14, 2014) 12, 16

**Statutes**

18 U.S.C. § 1591(a)....................19

18 U.S.C. § 3500....................1, 2, 5, 6, 10, 11, 12, 17, 20

All Writs Act, 28 U.S.C. § 1651....................17

N.Y. Crim. Proc. Law § 160.50....................4, 17, 18

N.Y. Pub. Off. Law § 87(2)(a)....................4

N.Y. Pub. Off. Law § 87(2)(b)....................4

**Rules**

Fed. R. Crim. P. 16....................1, 2, 3, 6, 7, 13

Fed. R. Crim. P. 16(a)(2)....................1, 9, 10

Fed. R. Crim. P. 17....................3, 13

Fed. R. Crim. P. 17(c)....................3, 6, 7, 10, 11, 12, 14, 15, 17

Fed. R. Crim. P. 17(c)(2)....................4, 16, 17

Fed. R. Crim. P. 17(h)....................2, 11, 12

Fed. R. Crim. P. 26.2....................11, 12

Fed. R. Evid. 412....................20

Fed. R. Evid. 613....................15

Fed. R. Evid. 803(8)....................14

## I. PRELIMINARY STATEMENT

The government's opposition seeks to have it both ways when it comes to discovery. On the government's reasoning, Rule 16 restricts Mr. Colbert to the documents the state agencies chose to provide to the prosecution, while for *Brady* and Jencks Act purposes any relevant items the agencies did not turn over sit outside the prosecution's possession and therefore never need to be produced at all. Under that logic, no one ever has to answer for the completeness of the state files.

The government makes several important concessions in its opposition. *First*, the government takes no position on the DOCCS subpoena, objecting only to Request No. 13. Dkt. 113 at 46. That subpoena can issue today. *Second*, the government represents that it requested "the entire file" from three police departments and has produced "the overwhelming majority" of each. Dkt. 113 at 8, 11, 14. In plain terms: it possesses the complete files, and it has withheld a portion. *Third*, the government promises to produce the withheld remainder "in accordance with the § 3500 production schedule." Dkt. 113 at 35, 38–39, 42–43, 45. The material exists, and it is coming. *Fourth*, the government's file requests stopped at three police departments. Nowhere does it claim to have requested, received, or reviewed the Erie County District Attorney's file or the Niagara Falls Police Department's file. Its only possession disclaimer is DOCCS. Dkt. 113 at 20. *Fifth*, the government acknowledges that a prosecutor's obligations "differ if the federal charges resulted from a joint federal-state investigation." Dkt. 113 at 33 n.7. It then declines to say whether this was one.

These concessions decide the motion, because the government's remaining arguments require the state agencies to occupy two positions at once. To invoke Rule 16(a)(2) and

the Jencks Act as shields, the federal government must be in possession of the state agencies records. To disclaim any duty to review and disclose their files under *Brady*, the agencies must sit outside it. They cannot be both. Part II below shows that the subpoenas to the two offices whose files the government never gathered should issue on the government's own account. Part III shows that the government's possession of the three police files supports issuance, or at most alternative relief; it does not support denial. Parts IV and V answer the Rule 17(h) and *Nixon* objections. Part VI addresses the unsealing request, which the government answers only in footnotes. Part VII responds, respectfully, to Minor Victim 2.

## II. THE SUBPOENAS TO THE ERIE COUNTY DISTRICT ATTORNEY AND THE NIAGARA FALLS POLICE DEPARTMENT SHOULD ISSUE ON THE GOVERNMENT'S OWN ACCOUNT

The government does not indicate that it has sought any information from the Erie County District Attorney's Office or the Niagara Falls Police Department.[1] The government's inventory of Minor Victim 2 material confirms the gap: every listed item is federally sourced (a Facebook account seized by federal warrant, a phone extraction, federal reports and subpoenas). Dkt. 113 at 18. Nothing on the list is a Niagara Falls Police Department record.

Material the government does not possess cannot be produced under Rule 16, and cannot be produced under 18 U.S.C. § 3500. The Niagara Falls Police Department files are not "otherwise procurable" by any diligence directed at the government. *See United States v. Nixon*, 418 U.S. 683, 699 (1974) (asking whether materials are "not otherwise procurable reasonably in

[1]The government's response describes its collection efforts with care. When it "began investigating Mr. Colbert and others," it requested "the entire file" from the Lancaster Police Department, the Amherst Police Department, and the Hamburg Police Department. Dkt. 113 at 8, 11, 14.

advance of trial by exercise of due diligence").[2] The government concedes the point in its own words: only "some of the files Mr. Colbert seeks are 'otherwise procurable.'" Dkt. 113 at 46. Some are not. For those, Rule 17(c) is the only way to obtain those materials. *See United States v. Hwa*, No. 18-CR-538 (MKB), 2021 WL 11723583, at *60 (E.D.N.Y. Sep. 3, 2021) (denying Rule 16 compulsion for third-party documents "which [the defendant] may obtain himself through a Rule 17 subpoena"), aff'd, 161 F.4th 127 (2d Cir. 2025). This district has said the same thing about these very custodians: "defendants cannot force the government to produce copies of state police or prison reports unless the government already has such reports in its possession . . . ." *United States v. Green,* 144 F.R.D. 631, 641 (W.D.N.Y. 1992), quoted in *Hwa*, 2021 WL 11723583, at *57.

As to the District Attorney's Office in particular, this Court's own precedent removes the government's remaining objection. In *United States v. Ruth*, Judge Wolford enforced a defense Rule 17 subpoena served on a county district attorney's office and held: "Regardless of whether the government and the [county district attorney] conducted a joint investigation or prosecution, if these materials are not within the possession of the government, Ruth may seek to obtain them by subpoena." 495 F. Supp. 3d 161, 165 (W.D.N.Y. 2020).[3] *Ruth* also supplies the answer to the government's privilege objections: the court declined to "limit the scope of the subpoena simply because some documents responsive to it may be privileged" and instead required

[2] The government's quotation of *Nixon*'s four-factor formulation, Dkt. 113 at 31, includes language ("due to its focus on assisting the defendant with trial, Rule 17(c)") that does not appear in the opinion. *Compare Nixon*, 418 U.S. at 699–700.

[3] *Ruth* arose at sentencing, and its discussion of *Nixon*'s admissibility requirement reflects that posture. 495 F. Supp. 3d at 164. The holding quoted above does not: it rests on decisions addressing pretrial and trial subpoenas. *See id.* at 165 (citing *United States v. Upton*, 856 F. Supp. 727, 750 (E.D.N.Y. 1994); *United States v. Guerrerio*, 670 F. Supp. 1215, 1220 (S.D.N.Y. 1987); *United States v. Shakur*, 543 F. Supp. 1059, 1060 (S.D.N.Y. 1982)).

the district attorney to produce a privilege log. *Id.* at 166–67. Mr. Colbert asks for the same order here.

Even if the subpoena is issued, the Erie County District Attorney's Office retains every tool to protect its own interests after service, including a motion to quash or modify. Fed. R. Crim. P. 17(c)(2). The government's ability to object on the Office's behalf is a different matter: the government has standing to move against a subpoena served on a non-party only where the subpoena "infringe[s] on a legitimate interest" of the government itself. *United States v. Jabar*, No. 9-CR-170V, 2016 WL 8671207, at *1 (W.D.N.Y. July 22, 2016) (finding that standard satisfied because the subpoenaed entities were federal agencies) (citing *United States v. Nachamie*, 91 F. Supp. 2d 552, 559–60 (S.D.N.Y. 2000)). *Ruth* expressly declined to decide whether the government has any standing to oppose a subpoena to a county district attorney, resolving the motion on other grounds "even if the government has standing to oppose the subpoena." 495 F. Supp. 3d at 164. In any event the government has responded, but any work-product or other privilege objection belongs to the Erie County District Attorney, not the United States Attorney's Office.

The Court should therefore issue the Erie County District Attorney and Niagara Falls subpoenas. The government never gathered these files, no federal discovery mechanism reaches them; and the defense cannot obtain them any other way. Absent the proposed unsealing order, the Erie County District Attorney's Office records would not be available through New York's Freedom of Information Law due to the sealing statute. N.Y. Pub. Off. L. § 87(2)(a); N.Y. Crim. Proc. L. § 160.50. Likewise, the Niagara Falls Police Department files, because they involve a minor, would not ordinarily be accessible through FOIL. N.Y. Pub. Off. L. § 87(2)(b).

## III. THE GOVERNMENT'S POSSESSION OF THE THREE POLICE FILES SUPPORTS ISSUANCE, NOT DENIAL

For Lancaster, Amherst, and Hamburg, the government's position reduces to this: we hold the complete files, we have produced most of their contents, and the rest will arrive on the § 3500 schedule. None of that defeats issuance.

### A. A partial production and a late schedule do not make the withheld remainder "otherwise procurable"

The "otherwise procurable" cases require a complete commitment. In *United States v. Cole*, the court quashed a request it otherwise found valid only because the government represented that it would produce "the documents responsive to Cole's request," the complete set. No. 19 Cr. 869 (ER), 2021 WL 912425, at *6 (S.D.N.Y. Mar. 10, 2021). The government's commitment here is neither complete nor timely. It has produced "the overwhelming majority" of each file, not all of it, and its promise for the remainder is keyed to a § 3500 schedule that follows the August 14 motions deadline. Favorable material must be disclosed "in time for its effective use at trial or at a plea proceeding," *United States v. Coppa,* 267 F.3d 132, 135 (2d Cir. 2001), and "the time required for the effective use of a particular item of evidence will depend on the materiality of that evidence . . . as well as the particular circumstances of the case," *id.* at 146. The particular circumstance here is a court-ordered deadline for the suppression and dismissal motions this material serves, Dkt. 105, and Mr. Colbert intends to use these materials at trial as well.

If the Court prefers to hold the government to its representations rather than issue these subpoenas immediately, the Court could also order the prosecution to make a renewed request of the police departments calculated to obtain *Brady* and Jencks Act material; for model language, the Court could look to the orders submitted as Defendant's Exhibit C. Dkt. 109-3. Courts in this circuit have entered exactly that kind of order, directing the government itself to

review a partner agency's materials and produce what it finds. *See United States v. Gupta*, 848 F. Supp. 2d 491, 493–95, 497 (S.D.N.Y. 2012) (ordering the government to review the partner agency's joint-interview memoranda and disclose *Brady* material); *United States v. Martoma*, 990 F. Supp. 2d 458, 460–62 (S.D.N.Y. 2014) (extending the duty to documents "in the sole possession" of the partner agency). An order of either kind would enforce commitments the government has already made, *see United States v. Percevault*, 490 F.2d 126, 132 (2d Cir. 1974) (barring only disclosure compelled "over the government's objection," while observing that "sound trial management would seem to dictate that Jencks Act material should be transmitted prior to trial, especially in complex cases"), and the § 3500 schedule cannot displace it: "[c]omplying with the Jencks Act . . . does not shield the government from its independent obligation to timely produce exculpatory material under *Brady*—a constitutional requirement that trumps the statutory power of 18 U.S.C. § 3500." *United States v. Rittweger*, 524 F.3d 171, 181 n.4 (2d Cir. 2008). And if the government were to accept responsibility for *Brady* and Jencks Act material within the three police files, treating them as within its possession and control for disclosure purposes, the subpoenas to those departments could be withdrawn as unnecessary. What the government cannot do is disclaim that responsibility and oppose the subpoenas at the same time.

### B. Rule 17 subpoenas may reach evidence beyond Rule 16 material where the material sought is relevant to other pretrial issues

In *United States v. Koschtschuk*, the government argued that records supporting outrageous-government-conduct and *Franks* claims fall outside Rule 16 because such claims are not part of "the defendant's defense." The court accepted the premise and denied the government's motion to quash the defense's Rule 17(c) subpoena anyway: "while defendants may not be entitled to the discovery sought in the subpoena under Rule 16, they may obtain such discovery based upon

their threshold showing" in support of those claims. No. 09-CR-0096(S)(M), 2011 WL 1549464, at *2 (W.D.N.Y. Apr. 22, 2011) (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974) ("Upon an adequate preliminary showing of relevancy, however, the district court may hold a hearing upon a motion raising defenses or objections . . . and issue a subpoena directing the government to produce books, papers or records for introduction at the hearing, Rule 17(c)")). The subpoena there ran to the FBI itself, for internal documents, and it survived. Subpoenas to closed state files stand on firmer ground still.

*Jabar* is consistent, not contrary. Its rule that Rule 17(c) subpoenas "served on the government cannot expand the scope of Rule 16" concerned federal government-directed subpoenas. *United States v. Jabar*, 2016 WL 8671207, at *3. Every subpoena at issue here runs to a non-party. And Judge Vilardo authorized issuance of the Jabar subpoenas before resolving the merits on a quash motion, which is precisely the procedure Mr. Colbert invoked by bringing this application on notice. *Id.* at *1; *see also id.* at *2 (the fact that a defendant seeks impeachment material "is not enough, by itself" to defeat relevance).

**C. The government's certifications cannot be self-executing**

The government's response asks the Court to deny compulsory process on the strength of the government's descriptions of its own diligence. The Second Circuit has held that this is error: a court may not refuse to compel production of a file for in camera inspection "based solely on the representations of the government." *United States v. Kiszewski*, 877 F.2d 210, 216 (2d Cir. 1989). In camera review exists "to supplement the Government's assessment of materiality with the impartial view provided by the trial judge." *United States v. Leung*, 40 F.3d 577, 583 (2d Cir. 1994). Even the government's best privilege authority ordered the disputed document

produced for in camera review, at the defense's request, before ruling. *United States v. Klein*, No. 16-CR-442 (JMA), 2017 WL 782326, at *1, *3 (E.D.N.Y. Feb. 28, 2017).

The response's representations are unfalsifiable. The government states that it has "no information to suggest that any other statements exist." Dkt. 113 at 35. That is not a representation that none exist; it is a representation that the government has not looked. Nor does the record disclose what the government actually asked each department for: a request for the "case file" is not a request for dispatch audio, raw notes, internal referrals, or evidence-transfer paperwork, and the form of the request shapes what a records custodian pulls. The prosecutor's obligation is to "actively seek" *Brady* material "in its files and in the files of related agencies reasonably expected to have possession" of it. *Coppa*, 267 F.3d at 140 (describing *Kyles*). The Court should require the government to state, for each agency: what it requested and in what form; whether it received the entire file; whether it retains the entire file; and whether any agency declined, withheld, or redacted anything in response. A request that yielded "the overwhelming majority" of a file is, on the government's own account, a request that did not yield all of it.

### D. The government's footnote 7's unanswered question resolves the rest

The government concedes that its disclosure obligations "differ if the federal charges resulted from a joint federal-state investigation," and then pleads a lack of information. Dkt. 113 at 33 n.7. The government alone holds that information, and its own brief supplies most of the answer: it requested the entire files "when the government began investigating," Dkt. 113 at 8, 11, 14; Homeland Security Investigations documented the transfer of state-seized property in the Lancaster and Hamburg files, *id.* at 8, 15; the phone extractions were performed at a joint federal-state forensics laboratory, *id.* at 8; and federal search warrants were obtained for extractions "generated pursuant to the state search warrants." *Id.* at 8. The discovery produced to date points

the same way. The Lancaster detective who led the June 27, 2024 sting, Detective Robert Cornell, swore in the state search warrant applications that he is "a member of the Erie County Human Trafficking Task Force and . . . a Task Force Officer with U.S. Homeland Security Investigations (HSI) assigned to the Human Trafficking Group," USAO-041814; USAO-041826, and that the Erie County Sheriff's investigators he enlisted "are also members of the Erie County Human Trafficking Task Force," USAO-041828.[4] The state warrants were directed to, and executed at, the FBI's Western New York Regional Computer Forensics Laboratory. USAO-037185; USAO-037188; USAO-037208; USAO-037211. And the timing confirms the overlap: the government requested the complete files "when [it] began investigating," while at least one of the state prosecutions remained pending, before the state cases were dismissed and sealed in January 2025. Dkt. 113 at 8, 11, 14; Dkt. 109-5 at 1; Dkt. 109 ¶ 3.

The government's own authorities make the consequences symmetrical. Rule 16(a)(2) reaches state and local reports only "in a federal prosecution based in part upon the investigative efforts of local or state law enforcement agents." *United States v. Cherry,* 876 F. Supp. 547, 551 (S.D.N.Y. 1995)*;* accord *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513–14 (S.D.N.Y. 2013) (treating the NYPD as "other agents" under Rule 16(a)(2) because it was "aiding in a federal investigation"). If that predicate holds here, the agencies are part of the team, and the prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *see United States v. Antone*, 603 F.2d 566, 570 (5th Cir. 1979) (state agents who pooled

[4]The state search warrant applications cited in this paragraph are designated "Attorney Possession Only" under the Protective Order. The government consented in writing on July 30, 2026 to the references made here. *See* Dkt. 66 ¶ 17.

investigative energies with federal authorities were "in a real sense members of the prosecutorial team"); *United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006) ("the relevant inquiry is what the person did, not who the person is"). On that point, the withheld remainder of the three files must be reviewed for Brady material. Physical custody is beside the point: "The inquiry is not whether the United States Attorney's Office physically possesses the discovery material; the inquiry is the extent to which there was a 'joint investigation' with another agency." *United States v. Upton*, 856 F. Supp. 727, 750 (E.D.N.Y. 1994); *see United States v. Shakur*, 543 F. Supp. 1059, 1060 (S.D.N.Y. 1982) (Weinfeld, J.) (calling the physical-possession objection "hypertechnical and unrealistic"). Those are the same decisions *Ruth* relied upon. 495 F. Supp. 3d at 165. The Jencks Act works the same way: even a joint investigation with a foreign sovereign requires at least "a good-faith effort to obtain the statements of prosecution witnesses in the possession of the foreign government." *United States v. Paternina-Vergara*, 749 F.2d 993, 997–98 (2d Cir. 1984) (joint investigation with Canadian authorities). A domestic task-force partnership asks no less of the government.

Rule 16(a)(2) limits discovery "under this rule" of reports made by agents "in connection with investigating or prosecuting the case"; § 3500 reaches statements "in the possession of the United States." Neither provision governs an independent custodian, and using Rule 17(c) to reach one circumvents nothing.

At the same time, the government protests that *Brady* does not make it "a 'private investigator and valet . . . gathering evidence and delivering it to opposing counsel.'" Dkt. 113 at 22 (quoting *United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013)). The source of that phrase denied relief because the defendant had "offered no explanation for failing to procure the tapes himself" from the third party. *United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir.

2002). A Rule 17(c) subpoena is that self-help. The government cannot invoke the valet principle while opposing the only tool the principle presupposes.

The Court should require the government to state on the record whether the state agencies acted jointly with, or at the direction of, federal authorities. If the government declines to say, the Court should resolve the question in camera. *Kiszewski*, 877 F.2d at 216.

## IV. RULE 17(h) CHANNELS THE TIMING OF WITNESS-STATEMENT PRODUCTION; IT DOES NOT PLACE THESE RECORDS BEYOND REACH

### A. Rule 17(h) governs statements in the parties' possession, and the Court should so hold

Rule 17(h)'s text answers the government's broadest argument, and its history confirms the answer. Before the 2002 restyling, Rule 17(h) provided that witness statements "may not be subpoenaed from the government or the defendant," and the Advisory Committee described the restyling as "intended to be stylistic only." *United States v. Goldstein*, No. 21-CR-550 (DC), 2023 WL 3662971, at *6 (E.D.N.Y. May 25, 2023). The rule exists to implement the Jencks Act, which by its terms reaches statements "in the possession of the United States." 18 U.S.C. § 3500(a). Reading Rule 17(h) to bar subpoenas to non-party custodians would produce the structural problem *Goldstein* identified: "If this interpretation is correct, defendants in criminal cases would have no ability to obtain prior statements from witnesses that are not in the possession of the Government, as Rule 26.2 discovery is available only from parties, and not non-party witnesses." *Id.* at *5. On that reading, a closed state file held by a local agency would be beyond the reach of any party, forever, no matter how central its contents. Nothing in the rule's text, origin, or purpose commands that result, and the Court should adopt *Goldstein*'s reading: Rule 17(h)

restricts subpoenas for statements in the parties' possession and leaves third-party custodians to Rule 17(c) and *Nixon*.[5]

### B. In any event, the government has not shown that the subpoenas call for "statements" at all

Rule 17(h) reaches a "statement" as Rule 26.2(f) and § 3500(e) define one: a writing the witness signs, adopts, or approves; a substantially verbatim, contemporaneously recorded recital; or grand jury testimony. Summaries that "evidence substantial selection of material," or that were "prepared after the interview without the aid of complete notes" and so "rest on the memory of the agent," do not qualify, and neither do statements containing "the agent's interpretations or impressions." *Palermo v. United States*, 360 U.S. 343, 352–53 (1959). Interview notes are not adopted by "discussions of the general substance of what the witness has said." *Goldberg v. United States*, 425 U.S. 94, 110–11 n.19 (1976). Unadopted, non-verbatim third-party notes are not the witness's statement. *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992); *see United States v. Scotti*, 47 F.3d 1237, 1249–50 (2d Cir. 1995) (rough interview notes that the agent did not sign, adopt, or vouch for were not the agent's statement, and were neither substantially verbatim nor grand jury testimony).

## V. THE SUBPOENAS SATISFY NIXON

The subpoenas satisfy each *Nixon* requirement. The government reads *Nixon* to impose a freestanding three-part test. *Nixon* reserved whether even its own standard applies "in its

[5] District courts have divided on the question, and no court of appeals has resolved it. *Compare Goldstein*, 2023 WL 3662971, at *5–6, *United States v. Chavez*, No. 15-cr-00285, 2020 WL 109703, at *3–4 (N.D. Cal. Jan. 9, 2020), *and United States v. Hussain*, No. 16-cr-00462, 2018 WL 1091083, at *2 (N.D. Cal. Feb. 28, 2018), with *United States v. Vasquez*, 258 F.R.D. 68, 73 (E.D.N.Y. 2009), and *United States v. Yudong Zhu,* No. 13 CR. 761, 2014 WL 5366107, at *3 (S.D.N.Y. Oct. 14, 2014). *Goldstein* examined the rule's text and history; the contrary decisions did not. And the judgment *Goldstein* supported was affirmed. *United States v. Goldstein*, No. 24-556, 2026 WL 603803 (2d Cir. Mar. 4, 2026).

full vigor" to subpoenas directed at third parties rather than the government, 418 U.S. at 700 n.12, and courts in this circuit have applied a materiality-based standard to defense subpoenas to non-parties. *See United States v. Weigand*, 520 F. Supp. 3d 609, 612–13 (S.D.N.Y. 2021) ("no binding authority requires" applying *Nixon* to defense third-party subpoenas; adopting the standard of *United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008)); *United States v. Soliman*, No. 06CR236A, 2009 WL 1531569, at *3–4 (W.D.N.Y. May 29, 2009) (applying the same standard in this district); *United States v. Bergstein*, 788 F. App'x 742, 746 (2d Cir. 2019) (summary order) (declining to choose between the standards). *See, e.g., United States v. Rajaratnam*, 753 F. Supp. 2d 317, 321 n.1 (S.D.N.Y. 2011) ("Nixon should not so readily be divorced from the concerns that produced it." "[I]n the context of a subpoena to a third party to whom Rule 16 does not apply, requiring the defendant to specify precisely the documents he wants without knowing what they are borders on rendering Rule 17 a nullity."). Mr. Colbert satisfies either standard.

**A. The records are relevant to the charges, not merely to motions**

Each subpoena targets the police file of an incident the grand jury charged: the June 27, 2024 Lancaster sting (conduct underlying Counts 11, 16, and 17), the July 20, 2024 Hamburg robbery (Count 20), the December 29, 2024 Amherst extortion (Count 36), and the Niagara Falls missing-person episodes that the superseding indictment itself places inside the charged recruitment of Minor Victim 2 (Part VII below). These records have direct trial uses: identification-procedure documentation for cross-examination of identification witnesses, 911 and dispatch records for the trial timeline, chain-of-custody documentation for foundation challenges, and contemporaneous police records as substantive defense evidence.

The government's contrary argument concedes that the materials may be admissible at trial. Its fallback sentence reads: "And even were Minor Victim 2's movements predating the

charged conduct relevant at trial, they are not relevant to a pre-trial proceeding." Dkt. 113 at 45. Relevance at trial is the *Nixon* question. The retreat to pretrial timing fails on the authorities: Rule 17(c) "can properly be used" to obtain production for suppression proceedings, *United States v. Louis*, No. 04 Cr. 203, 2005 WL 180885, at *3 (S.D.N.Y. Jan. 27, 2005) (a case the government cites); authorizing a subpoena in anticipation of a pretrial hearing "lies largely in the trial judge's discretion," *Berrios*, 501 F.2d at 1211–12; and in this district, defense subpoenas returnable "well in advance of any trial date (since no date has been set)" were "timely" where they served a pending pretrial motion. *Soliman*, 2009 WL 1531569, at *4; *see also* *United States v. Cole*, 2021 WL 912425, at *1 (adjudicating a Rule 17(c) subpoena on the merits while the trial date was adjourned indefinitely). The absence of a trial date is not a defect; the presence of a motions deadline is the point.

**B. The records are admissible, and not for impeachment alone**

Police and public records offered by the accused are admissible. Fed. R. Evid. 803(8)'s law-enforcement clauses protect defendants; they do not disarm them. Police records that satisfy the trustworthiness standard are admissible "when offered by a criminal defendant to support his defense." *United States v. Smith*, 521 F.2d 957, 965–66 (D.C. Cir. 1975); *see also* *id.* at 968–69 n.24 (Rule 803(8) authorizes admission of law-enforcement reports "at the request of the defendant"). The Second Circuit adopted that reading in *United States v. Oates*, 560 F.2d 45, 78 (2d Cir. 1977). Business records, recorded recollections, and bias evidence supply independent paths. Proof of bias "is never collateral." *United States v. Blackwood*, 456 F.2d 526, 530 (2d Cir. 1972).

The impeachment-only cases the government collects state a rule Mr. Colbert does not offend, and their own text carves out his showing. The same paragraph of *Skelos* that the

government quotes for its hearsay point continues: documents bearing on a witness's cooperation or bias "can be proper subjects of a Rule 17(c) motion because those types of documents may themselves be admissible into evidence," and prior inconsistent statements "can be admissible under Fed. R. Evid. 613, and so can be the proper subject of a Rule 17(c) subpoena." *United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018). *Cherry* itself explains that the Nixon tapes were producible despite their impeachment value because they had "other valid potential evidentiary uses." 876 F. Supp. at 553. And courts in this circuit hold that "evidence sought for impeachment can satisfy the admissibility prong under *Nixon*" for a trial subpoena. *Cole*, 2021 WL 912425, at *4.

*United States v. Alexander* is not to the contrary. There, defendants subpoenaed the victims themselves for the entirety of their Instagram data and private communications, conceded a credibility purpose, and set return dates pegged to a trial beginning days later. The court held that this was, "in some respects," fatal, because "Rule 17(c) may not be used to obtain materials solely for purposes of impeachment," while reaffirming that trial subpoenas for impeachment material are proper and enforcing the two requests that identified specific documents. No. 24-CR-676 (VEC), 2026 WL 112113, at *2, *4 (S.D.N.Y. Jan. 15, 2026).[6] Mr. Colbert's subpoenas run to law-enforcement agencies, not victims; they seek official incident records with case-in-chief and suppression uses; and no trial date exists yet.

Finally, if particular documents raise hearsay questions, those questions are premature at the issuance stage. Rule 17(c) "does not by its terms require that a subpoena seek only

[6] The government renders this holding as: a pretrial effort to "cull up impeachment evidence as to each of the victims . . . . is . . . fatal." Dkt. 113 at 32. The omitted words are "in some respects" and "solely." *Alexander*, 2026 WL 112113, at *2 ("This is, in some respects, fatal, as Rule 17(c) may not be used to obtain materials solely for purposes of impeachment.").

admissible evidence," and courts address hearsay objections "to specific documents at the pertinent time." *Weigand*, 520 F. Supp. 3d at 615.

### C. The subpoenas are specific, and the government's overbreadth objections go to scope, not issuance

The subpoenas identify specific agencies, specific case numbers, specific incident dates, and enumerated document categories. That is what the specificity requirement asks.[7] Even if the Court harbors concerns about the scope of any one request, the remedy is modification at or after the hearing, not wholesale denial, and the subpoenaed agencies remain free to seek relief under Rule 17(c)(2) once served.

The requests the government singles out are the kind courts enforce. Intake and screening records of a closed prosecution are factual work product that courts order produced, with opinion notations redacted after in camera review. *See Abdell v. City of New York*, No. 05 Civ. 8453 (KMK)(JCF), 2006 WL 2664313, at *7–8 (S.D.N.Y. Sep. 14, 2006) (DA data sheets); *Crosby v. City of New York*, 269 F.R.D. 267, 277–81 (S.D.N.Y. 2010); *Burbar v. Inc. Vill. of Garden City*, 303 F.R.D. 9, 15–16 (E.D.N.Y. 2014) (ECAB sheet from a dismissed, sealed prosecution produced in its entirety).[8]

One important note: the government's standing to resist these subpoenas extends no further than legitimate interests of its own. *See United States v. Ray*, 337 F.R.D. 561, 569–71

---

[7] The government's specificity authorities themselves enforced defense subpoenas in substantial part once requests were tied to identified subjects. *See United States v. Rajaratnam*, 753 F. Supp. 2d 317, 320 n.1 (S.D.N.Y. 2011) (denying motion to quash in full); *United States v. Sawinski*, No. 00 CR. 499, 2000 WL 1702032, at *2 (S.D.N.Y. Nov. 14, 2000) (enforcing subpoena against the DEA in substantial part); *Vasquez*, 258 F.R.D. at 73 (sustaining subpoena to a county police department except as to witness statements); *Yudong Zhu*, 2014 WL 5366107, at *3 (enforcing four of six requests); *Skelos*, 2018 WL 2254538, at *5–*7 (denying the government's motion to quash as to nine requests).

[8] *Abdell*, *Crosby*, and *Burbar* are civil cases; *Burbar*'s district attorney was a party. The privilege principles they apply, non-party work-product protection under *Hickman*, the factual-opinion line, and agency-head invocation, are not civil-specific, and the *Nixon* showing for these categories is made in this Part.

(S.D.N.Y. 2020) (government lacked standing to challenge subpoenas for victims' records where the victims had not objected and no government interest was implicated). The agencies themselves may move to quash after issuance, Fed. R. Crim. P. 17(c)(2), and any work-product or deliberative-process claim belongs to the District Attorney, invoked personally or through a designated senior official, with reasons. *Kaufman v. City of New York*, No. 98 Civ. 2648 (MJL)(KNF), 1999 WL 239698, at *3–4 (S.D.N.Y. Apr. 22, 1999); *Conte v. County of Nassau*, No. CV 06-4746 (JFB)(ETB), 2009 WL 1362784, at *5–6 (E.D.N.Y. May 15, 2009).

## VI. THE UNSEALING MOTION STANDS EFFECTIVELY UNOPPOSED

The government answers the unsealing motion in two footnotes. Dkt. 113 at 1 n.2, 33 n.7. It engages neither the All Writs Act authority nor the sample orders submitted as Exhibit C. Its only substantive assertion, that "there appears to be a dearth of caselaw governing the unsealing of state court cases in federal criminal cases," id. at 33 n.7, is mistaken, and the government's own citations show it.

*Ceballo*, which the government cites for Rule 17(c) restraint, was a federal criminal case in which the defendant subpoenaed the district attorney's office for the sealed state file underlying his federal charges. The court found the office's sealing objections "unpersuasive," held that under N.Y. Crim. Proc. L. § 160.50(1)(d) the accused "is entitled to disclosure of certain contents of the file," and ordered witness statements disclosed under § 3500 with in camera review of the remainder. *United States v. Ceballo*, No. 03 Cr. 283 (SWK), 2003 WL 21961123, at *3 (S.D.N.Y. Aug. 18, 2003). The broader rule is settled in this circuit: where federal interests control, "discoverability, privileges, and confidentiality are governed by federal law, not state law," and federal courts "commonly order production of documents sealed pursuant to" § 160.50, with

redactions protecting third parties. *Crosby*, 269 F.R.D. at 274–75; *see Schomburg v. N.Y. City Police Dep't,* 298 F.R.D. 138, 141 (S.D.N.Y. 2014) (no state-court unsealing order required); *Howard v. City of Rochester*, 758 F. Supp. 3d 109, 122–26 (W.D.N.Y. 2024) (district courts possess authority to unseal state records held by a district attorney when the issue arrives by subpoena or discovery demand).

The equities run one way. The government requested and received the entire police files, notwithstanding the sealing. The defense cannot obtain the same files by any means: § 160.50 binds the agencies, and the government's productions cannot be tested for completeness against files the defense has never seen. The government cannot describe these records as "otherwise procurable" while defending the seal that makes them unprocurable. Mr. Colbert renews his proposed protective conditions: attorneys'-eyes-only treatment under the existing protective order (Dkt. 66).

An unsealing order will also facilitate Mr. Colbert's ability to obtain records from the local courts in which the state proceedings occurred. Without that order, those court records remain sealed under N.Y. Crim. Proc. L. § 160.50 no matter how this Court resolves the subpoena questions.

## VII. MINOR VICTIM 2'S RESPONSE DOES NOT ADDRESS ALL CHARGES IN THE SUPERSEDING INDICTMENT

The response's central premise, that the records "concern events which predate the period during which Mr. Colbert is charged with trafficking Minor Victim 2," Dkt. 115 ¶ 5, is wrong on the face of the superseding indictment. Paragraph 12 of the indictment's introduction, incorporated by reference into every count involving Minor Victim 2, alleges: "Between April and May 2024, LAWRENCE COLBERT and JOHNSON attempted to recruit, and recruited,

Minor Victim 2 . . . to engage in commercial sex work." Dkt. 85 ¶ 12. The April 16, 2024 missing-person report is contemporaneous police documentation of the very weeks in which the grand jury alleges the recruitment occurred.

Nor are Minor Victim 2's whereabouts collateral. The indictment charges that Minor Victim 2 "would be caused to engage in a commercial sex act." Dkt. 85, Count 12; 18 U.S.C. § 1591(a). A commercial sex act requires a customer, and causing one requires placing the victim where commercial sex occurs. Where Minor Victim 2 was, who brought her there, and whether her documented runaway episodes explain her movements are therefore questions at the center of the element the government must prove, during weeks when the Niagara Falls Police Department was recording exactly those facts. Section 1591(a)(1) is phrased in the disjunctive: it reaches whoever, in or affecting interstate or foreign commerce, "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person" with the requisite knowledge. 18 U.S.C. § 1591(a)(1). The indictment tracks the full list. Dkt. 85, Count 12. Although the government has informally proffered a theory that emphasizes advertising and solicitation, it has not committed to any single theory of the case and remains free through trial to proceed on any of the statutory means, including that Mr. Colbert "harbor[ed]" or "transport[ed]" Minor Victim 2. Dkt. 113 at 44. On those theories, her location and movements are the actus reus itself.

The report dates are only the start of the investigations. Nothing in the record establishes when the April 16 episode closed or where Minor Victim 2 was located; the February report carries a public "LOCATED" update, and the April report does not. Whether the April episode ran into the charged window is a discrete, dated question of fact that only these records

answer. That is the opposite of a fishing expedition, and the answer cannot come from federal discovery, because the government never gathered this file. Dkt. 113 at 18.

The privacy objections are answered by the subpoena's design. It is directed to a police department, not to the victim; it imposes no obligation on her and commissions no new inquiry into her life. The records sought are missing-child reports and efforts-to-locate documentation, categories the department itself publicized at the time. They are not sexual-history records, and Rule 412 does not apply to them. Mr. Colbert renews the protections he proposed before any opposition was filed: attorneys'-eyes-only treatment, redaction of identifying details, and, if the Court prefers, in camera review before any disclosure. Minor Victim 2, like the government, asks only that denial be without prejudice. Dkt. 115 at 4.

## VIII. CONCLUSION

The Court should (1) enter the proposed unsealing order and issue the six subpoenas; or (2) at minimum, issue the DOCCS subpoena, the Niagara Falls subpoena, and the Erie County District Attorney subpoena now, and, as to the Lancaster, Amherst, and Hamburg records, either issue the subpoena or, in the alternative, order the government to certify the completeness of its productions, to make a renewed request of those departments calculated to obtain *Brady* and Jencks Act material (Dkt. 109-3 supplies model language), and to produce the remainder of the state files by a date certain, failing which those subpoenas issue; or (3) review any withheld or disputed materials in camera. *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n.15, 60 (1987); *Kiszewski*, 877 F.2d at 216.

Dated: July 31, 2026
Buffalo, New York

SAMUEL L. YELLEN,
ATTORNEY AT LAW, PLLC

By: /s/ Samuel L. Yellen
Samuel L. Yellen, Esq.
*Attorney for Defendant Lawrence Colbert*
1 Seneca St., 29th Fl.
Buffalo, NY 14203
(716) 304-2820
sam@yellenlegal.com