UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v. 25-CR-205-HKS-JLS

LAWRENCE COLBERT, et al.,

Defendants

**GOVERNMENT'S SUR-REPLY IN OPPOSITION TO DEFENDANT COLBERT'S MOTION FOR PRETRIAL RULE 17(c) SUBPOENAS**

On July 31, 2026, defendant Lawrence Colbert filed his Reply Memorandum of Law in Further Support of his Motion to Unseal Three State Court Cases and for Pretrial Rule 17(c) Subpoenas. Dkt. 116 (the "Reply"). In the Reply, Mr. Colbert stated that "[t]he Court should require the government to state on the record whether the state agencies acted jointly with, or at the direction of, federal authorities." *Id.* at 16. In Mr. Colbert's view, this information is relevant because, if the government did *not* seek out *Brady* material from local law enforcement agencies, such material might be lurking within the very files that Mr. Colbert is targeting through the at-issue Rule 17(c) subpoenas.

The defendant makes this request to force the disclosure of the very records to which he is not entitled. The government is required under *Brady* to disclose information held by other government agencies that engaged with the U.S. Attorney's Office in a "joint investigation." *United States v. Middendorf*, No. 18-CR-36 (JPO), 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018) (citing *United States v. Gupta*, 848 F. Supp. 2d 491, 493 (S.D.N.Y. 2012)). To determine if the prosecution conducted a joint investigation, courts have considered whether the other government agency: "(1) participated in the prosecution's

witness interviews, (2) was involved in presenting the case to the grand jury, (3) reviewed documents gathered by or shared documents with the prosecution, (4) played a role in the development of prosecutorial strategy, or (5) accompanied the prosecution to court proceedings." *Id.* (citing *United States v. Blaszczak*, 308 F. Supp. 3d 736, 741-42 (S.D.N.Y. 2018) and *United States v. Martoma*, 990 F. Supp. 2d 458, 461 (S.D.N.Y. 2014)). Courts look to whether the government agencies engaged in joint fact gathering. *Gupta*, 848 F. Supp. 2d at 494.

This case does not require the Court to determine whether the federal government jointly gathered facts with its local counterparts because the government requested the entire file from each of the three police departments that investigated Mr. Colbert and has produced the overwhelming majority of those files as part of its Rule 16 discovery production in this case. So, even assuming *arguendo* that there was a "joint investigation," the government has "disclose[d] [the] information held by other government agencies that engaged with the U.S. Attorney's Office . . ." *United States v. de la Cruz*, 818 F. Supp. 3d 472, 485 (E.D.N.Y. 2026).

The only remaining files Mr. Colbert could be seeking are *Jencks* material or law enforcement reports not subject to disclosure under Rule 16(a)(2). As Mr. Colbert acknowledges, *Nixon* requires the material he seeks to be "not otherwise procurable reasonably in advance of *trial* by exercise of due diligence." *United States v. Nixon*, 418 U.S. 683, 699 (1974); *see* Dkt. 116 at 10. Witness statements, including those authored by law enforcement or reflected in law enforcement reports, are otherwise procurable through *Jencks* productions, and thus cannot be procured through a Rule 17(c) subpoena. *See United States v. Hatfield*, No. 06-CR-0550 (JS), 2009 WL 2030350, at *2 (E.D.N.Y. July 14, 2009) (concluding that the defendant was not entitled to transcripts of witness statements sought through a Rule 17(c) subpoena "until after the witnesses for the Government have testified" as per the *Jencks*

Act and further holding that the defendant "may not circumvent the restrictions in Rule 16(a)(2) by subpoenaing records under Rule 17"); *United States v. Stein*, 488 F. Supp. 2d 350, 366 (S.D.N.Y.2007) (explaining that "the broad language of Rule 17(c)" is not intended to "swallow[ ] the 'rule' (*i.e.*, the Rule 16 limitations on the discovery available to criminal defendants)").

In view of this well-established law, Mr. Colbert's central analytical pivot is to reframe the material he seeks as "favorable" to the defense, such that it must be "disclosed 'in time for its effective use at trial or at a plea proceeding.'" Dkt. 116 at 10 (quoting *United States v. Coppa*, 267 F.3d 132, 136 (2d Cir. 2001)). The government does not disagree with this principle—but it has no application here: to the extent there is *Brady* in this case (a case, it bears repeating, in which much of the charged conduct is reflected in videos or CSAM material contained on the defendant's phone), the government has been disclosing it and will continue to do so. Despite receiving a significant quantum of data, Mr. Colbert offers this Court zero rationale for why he believes materially exculpatory material will be found in the Lancaster, Hamburg, and Amherst Police Department files, especially in documents regarding chain of custody and property inventory. The Court should require Mr. Colbert to articulate why his *Brady* concerns are not the stuff of mere speculation and why they merit *in camera* review. *See United States v. James,* No. 02 CR 0778 (SJ), 2007 WL 914242, at *20 (E.D.N.Y. Mar. 21, 2007) ("To warrant in camera review, the defendant must make a particularized showing of the materiality and usefulness of the information contained in the files." (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n. 15 (1987)*; United States v. Crisona*, 416 F.2d 107, 116 (2d Cir.1969)*; United States v. Evanchik*, 413 F.2d 950, 953 (2d Cir.1969)). Short of that, the Court should see Mr. Colbert's speculative assumption that *Brady* is lurking within the files for what it is: "little more than an attempt to circumvent the discovery processes that are in place" to guard against

the very kind of fishing expeditions the Supreme Court warned of in *Nixon*. *See United States v. Maxwell*, No. 20-CR-330 (AJN), 2021 WL 1625392, at *3 (S.D.N.Y. Apr. 27, 2021) (Nathan, J.) (quashing Rule 17(c) subpoenas where the defendant "fail[ed] to explain how the contents of th[e] letters" she sought "may be relevant to her theory" and furthermore rejecting the defendant's argument "that the Government may have the documents and has refused to produce them in contravention of *Brady* or *Giglio*" as "little more than an attempt to circumvent the discovery processes that are in place").

In any event, the government did not jointly investigate Mr. Colbert or his co-defendants with the Lancaster Police Department, which investigated the defendants in June 2024 or the Hamburg Police Department, which investigated the defendants in July 2024. The U.S. Attorney's Office did not open a file on Mr. Colbert until April 14, 2025. Homeland Security Investigations did not open a file until May 13, 2025. And the FBI did not open a file until August 1, 2025. So, federal law enforcement did not *begin* investigating Mr. Colbert until after the Lancaster and Hamburg Police Departments had, to the best of the prosecution's knowledge, completed their investigations.[1] Moreover, to the best of the prosecution's knowledge, those departments did not participate in witness interviews *after* the federal investigation commenced and their role was generally limited to the production of their case files to the U.S. Attorney's Office and other federal components. *See Middendorf*, 2018 WL 3956494, at *4; *United States v. Velissaris*, 22-CR-105 (DLC), 2022 WL 2392360, at *3 (S.D.N.Y. July 3, 2022) ("To the extent that the USAO has relied on evidence gathered from the SEC, that evidence was gathered before the USAO began its own investigation, and was not performed under its direction."); *United States v. Connolly*, 2017 WL 945934, at *7

[1] The government is aware that one Lancaster Police Department Detective assisted in the federal investigation in his capacity as an HSI Task Force Officer.

(S.D.N.Y. Mar. 2, 2017) (observing that "inter-agency document production is not dispositive of joint fact-gathering"). Similarly, those departments were not involved in the grand jury presentation, did not help develop prosecutorial strategy, and have not been present for court appearances. *See Middendorf*, 2018 WL 3956494, at *4. In view of these facts, the federal government clearly did not jointly investigate Mr. Colbert and others with the Lancaster and Hamburg Police Departments. Yet, as noted earlier, even if it had, it has no bearing on whether the government has discharged its *Brady* obligations: the government requested the entire case files from those departments and has disclosed everything Mr. Colbert is entitled to at this stage in the proceedings.

The question of a joint investigation regarding the Amherst Police Department is admittedly closer, as one non-Task Force Officer APD detective has attended (but not authored reports regarding) witness interviews and assisted with the investigation by joining federal surveillance teams and analyzing IP addresses, for example, at the direction of federal agents or the U.S. Attorney's Office. *Compare United States v. Gupta*, 848 F. Supp. 2d 491, 494 (S.D.N.Y. 2012) (concluding that SEC and FBI conducted joint investigation where SEC attorney authored memoranda summarizing each of the 44 interviews he participated in), *with Velissaris*, 2022 WL 2392360, at *2 ("[J]ointly conducted interviews, standing alone, do not support a conclusion that the SEC and USAO have conducted a joint investigation, particularly where the defendant's request is not limited to information about those interviews."), and *United States v. Collins*, 409 F. Supp. 3d 228, 242 (S.D.N.Y. 2019) (finding no joint investigation between the SEC and USAO where the agencies conducted 16 joint interviews out of 60 total interviews, and the SEC took no notes during these interviews); *United States v. Blaszczak*, 308 F. Supp. 3d 736, 738 (S.D.N.Y. 2018) (finding no joint investigation between the SEC and USAO where the agencies conducted "39 witness

interviews in tandem ... only as a matter of convenience"); *Middendorf*, 2018 WL 3956494, at *5 (finding no joint investigation between the SEC and USAO where "beyond conducting joint [witness] interviews, the Government and SEC have not coordinated their separate fact-finding efforts"). Even so, that detective was not part of the government's grand jury presentation and did not help develop the prosecution strategy.

But, once again, the question of a joint investigation is academic: the government requested—and to the best of its knowledge, received—the entire Amherst file. As Mr. Colbert knows (but repeatedly ignores), the government has produced a significant quantum of data obtained from the Amherst Police Department, which represents the overwhelming majority of what the government received. The government will produce the remainder consistent with the District Court's recommended 3500-material schedule. Despite his best efforts, the Court should not permit Mr. Colbert to transform his request for an overly broad, largely duplicative Rule 17(c) subpoena into a referendum on the government's solicitation and review of *Brady* material. The government understands its *Brady* obligations and has, and will continue to, comply with them.

DATED: Buffalo, New York, August 10, 2026.

MICHAEL DIGIACOMO
United States Attorney

BY: CASEY L. CHALBECK
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5881
Casey.Chalbeck@usdoj.gov