UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

SERENITY MARSHALL,

Defendant.

25-CR-205 (JLS)

**DEFENDANT SERENITY MARSHALL'S MEMORANDUM OF LAW IN SUPPORT OF CONTINUED RELEASE PENDING SENTENCING**

## PRELIMINARY STATEMENT

Defendant Serenity Marshall, through counsel, submits this memorandum in support of her continued release pending sentencing following her anticipated plea of guilty on October 28, 2026, to Count 7 of the Indictment, which charges conspiracy to commit Hobbs Act extortion in violation of 18 U.S.C. § 1951(a).

Ms. Marshall has been on pretrial release for eleven months without a single identified instance of non-compliance. She is ten months into a two-year residential therapeutic program for survivors of human trafficking, and she is engaged in intensive, trauma-focused mental health treatment. The government has agreed not to oppose a non-carceral sentence, and the parties' stipulated Guidelines range falls within Zone B for a zero-point offender.

Continued release is warranted for three independent reasons.

First, because the government is not seeking a sentence of imprisonment, 18 U.S.C. § 3143(a)(2) does not require remand. *See* 18 U.S.C. § 3143(a)(2)(A)(ii).[1]

Second, Ms. Marshall's personal circumstances—above all, the intensive therapeutic treatment she is now undergoing—constitute "exceptional reasons" why detention would not be appropriate. *See* 18 U.S.C. § 3145(c).

Third, and as the government knows, at the time of sentencing Ms. Marshall intends to move under the Trafficking Survivors Relief Act, 18 U.S.C. § 3771A, to vacate her conviction and expunge the associated records because her participation in the offense was a direct result of her having been a victim of trafficking. Detaining her pending sentencing on the conviction that Congress has expressly made subject to vacatur would be especially inappropriate.

## STATEMENT OF FACTS

### A. Procedural History

The grand jury returned the Indictment on October 14, 2025, charging Ms. Marshall in Counts 7 and 17–19. (Dkt. 1.) She was arrested and arraigned on November 12, 2025, and CJA counsel was assigned. The government initially moved for detention but withdrew that motion on November 18, 2025. Magistrate Judge Schroeder imposed

[1]Ms. Marshall does not concede that § 3143(a)(2) applies. That provision reaches only a person found guilty of an offense in a case described in 18 U.S.C. § 3142(f)(1)(A)–(C). The defense does not concede that Conspiracy to Commit Hobbs Act extortion—which may be accomplished through the wrongful use of fear, including fear of economic or reputational harm, *see* 18 U.S.C. § 1951(b)(2)—is categorically a "crime of violence." Ms. Marshall expressly preserves this argument.

conditions of release and directed that Ms. Marshall be released once a stable residence was secured. (Minute Entry, Nov. 18, 2025; Dkt. 67.) She was released on November 24, 2025. (Dkt. 62.)

A Superseding Indictment was returned on March 31, 2026. (Dkt. 85.) The superseding indictment did not add any additional charges or allegations against Ms. Marshall. At her arraignment on April 16, 2026, Magistrate Judge Schroeder allowed Ms. Marshall to remain released on the conditions previously imposed. (Minute Entry, Apr. 16, 2026.) A plea hearing is scheduled before this Court on October 28, 2026. (Dkt. 148.)

**B. The Plea Agreement**

Under the proposed plea agreement, Ms. Marshall will plead guilty to Count 7. The parties agree that her role in the conspiracy "was minor relative to the roles performed by other members of the conspiracy." (Plea Agreement ¶ 4(j).) They stipulate to a base offense level of 18 under U.S.S.G. § 2B3.2(a); a two-level reduction for minor role under § 3B1.2(b); a three-level reduction for acceptance of responsibility under § 3E1.1; and a two-level reduction as a zero-point offender under § 4C1.1. (*Id.* ¶¶ 6–11.) The result is a total offense level of 11 and Criminal History Category I, yielding a range of 8 to 14 months' imprisonment. (*Id.* ¶ 12.)

Critically, "[t]he government agrees not to oppose the defendant's request for a non-carceral sentence." (*Id.* ¶ 13.)

**C. Ms. Marshall's Background**

Serenity Marshall is a sex trafficking victim with a history of severe trauma. Ms. Marshall was 20 years old when she was arrested. She was born and raised in Buffalo, and both of her parents are deceased. She graduated from South Park High School in 2023 and is the mother of a young daughter. Before her arrest, she had experienced domestic violence and had spent approximately six months at a domestic violence shelter. She has no prior criminal record.

**D. Eleven Months of Full Compliance**

Pretrial Services' October 21, 2026 Release Status Report confirms that there "have been no identified issues of non-compliance with the defendant's release conditions." She has reported as directed; New York State DCJS tracking reflects no new arrests; every drug test she has submitted has been negative, including for marijuana; she has had no contact with co-defendants, victims, or potential witnesses; she has remained at her approved address and within the District; and she has complied with the rules of each residential program in which she has been placed. She has held employment intermittently while on supervision. She is currently not working so that she can focus on her therapeutic program requirements and intensified mental health treatment.

**E. Residential Program and Intensive Treatment**

Since December 22, 2025, Ms. Marshall has resided at Project Mona's House, where she is participating in a two-year residential therapeutic program for victims of human trafficking. Pretrial Services reports that she has complied with the program's rules.

In December 2025, Ms. Marshall began outpatient mental health treatment at Horizon Health Services. On September 3, 2026, she experienced a serious mental health crisis and was transported to Erie County Medical Center. Following that incident, "and in response to significant trauma-related issues," she was placed in intensive outpatient, trauma-focused treatment at Horizon Health Services. Pretrial Services reports that she "remains active and compliant with this intensive mental health treatment."

## ARGUMENT

### POINT I

### SECTION 3143(a)(2) DOES NOT REQUIRE DETENTION BECAUSE THE GOVERNMENT IS NOT SEEKING A SENTENCE OF IMPRISONMENT.

Section 3143(a)(2) directs detention of a defendant found guilty of an offense described in § 3142(f)(1)(A)–(C) unless two conditions are met. The first is that "an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person." 18 U.S.C. § 3143(a)(2)(A)(ii). The second is that the Court "finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community." *Id.* § 3143(a)(2)(B). Both conditions are satisfied here.

#### A. The Government Is Not Seeking Incarceration.

Mandatory detention under § 3143(a)(2) rests on the expectation that a sentence of imprisonment will follow. Congress therefore exempted cases in which the government

itself does not seek one. *See* 18 U.S.C. § 3143(a)(2)(A)(ii). This is such a case. The government has agreed not to oppose a non-carceral sentence. (Plea Agreement ¶ 13.)

The government's position is consistent with the Sentencing Guidelines. The stipulated range of 8 to 14 months falls in Zone B, where the Guidelines authorize sentences other than imprisonment. *See* U.S.S.G. § 5C1.1(c). For zero-point offenders like Ms. Marshall whose range falls in Zone A or B, the Sentencing Commission advises that "a sentence other than a sentence of imprisonment . . . is generally appropriate." U.S.S.G. § 5C1.1, comment. (n.10(A)).

**B. Clear and Convincing Evidence Shows Ms. Marshall Poses No Risk of Flight or Danger.**

Ms. Marshall's eleven-month record on release is the best evidence of how she will conduct herself pending sentencing, and it is unblemished. She has reported as directed, tested negative on every drug test, incurred no new arrests, avoided all prohibited contacts, and remained at her approved residence.

The concerns identified in the original 2025 bail report—a transient living situation, substance use, and tenuous employment—have each been addressed. She has lived in a single, structured residential program for ten months. She has produced uniformly negative drug tests. Her current absence from work is the product of her treatment commitments, undertaken with Pretrial Services' knowledge.

The government withdrew its detention motion at the outset of this case, and Magistrate Judge Schroeder continued her release after the Superseding Indictment was

returned. Nothing about her conduct since then has given the government or Pretrial Services any reason to revisit those determinations. Ms. Marshall has every incentive to continue on this path: she faces a sentencing at which the government will not oppose a non-carceral sentence.

## POINT II

## MS. MARSHALL'S PERSONAL CIRCUMSTANCES, INCLUDING THE INTENSIVE THERAPY SHE IS UNDERGOING, CONSTITUTE "EXCEPTIONAL REASONS" UNDER 18 U.S.C. § 3145(c).

Even if the Court concludes that § 3143(a)(2)(A)(ii) is not satisfied, it may release Ms. Marshall under § 3145(c). That section provides:

> A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145(c). The district court has authority to apply this provision. *United States v. DiSomma*, 951 F.2d 494, 496–97 (2d Cir. 1991). "Exceptional reasons" exist where there is "a unique combination of circumstances giving rise to situations that are out of the ordinary." *Id.* at 497. As shown in Point I.B, Ms. Marshall meets the § 3143(a)(1) conditions. And the combination of circumstances here is far out of the ordinary.

First, and most importantly, Ms. Marshall is in the midst of intensive, trauma-focused mental health treatment. She entered that treatment after the September 3, 2026 crisis that required her transport to Erie County Medical Center. Pretrial Services reports

that she was placed in this treatment "in response to significant trauma-related issues" and that she "remains active and compliant."

Remanding Ms. Marshall now would sever that treatment abruptly, at the most fragile point in her recovery and only weeks after the crisis that necessitated it. It would also replace her clinicians and her structured therapeutic environment with the conditions of pretrial confinement.

Second, detention would end Ms. Marshall's participation in a two-year residential program for survivors of human trafficking. She has been compliant in that program for ten months. The program addresses the very circumstances that brought her before the Court. Its loss would undo the progress she has made and would leave her without the stable residence and support that have made her compliance possible.

Third, detention would be disproportionate to any sentence Ms. Marshall is likely to receive. Her stipulated range is 8 to 14 months in Zone B. She is a zero-point offender, for whom the Commission advises that a non-custodial sentence is generally appropriate. The government does not oppose a non-carceral sentence. Her role is stipulated to be minor. Detention pending sentencing could approach or exceed the bottom of her Guidelines range before any sentence is imposed—a result the parties' agreement does not contemplate, and a consequence that would deprive Ms. Marshall of the rights in her plea agreement to a non-custodial sentence.

Fourth, a co-defendant convicted of the same count remains at liberty**.** Co-defendant Kristina Eaves pled guilty to Count 7 and was continued on release pending sentencing. (Dkt. 83.)

Taken together, these circumstances are precisely the kind of "unique combination" that makes detention inappropriate.

**POINT III**

**MS. MARSHALL WILL MOVE UNDER THE TRAFFICKING SURVIVORS RELIEF ACT TO VACATE HER CONVICTION AS A VICTIM OF SEX TRAFFICKING.**

In January 2026, Congress enacted the Trafficking Survivors Relief Act, Pub. L. No. 119-73, 139 Stat. 2003 (2026) (the "Act"). The Act added 18 U.S.C. § 3771A, which provides that a person convicted of a "level A offense" may move "the court that imposed the sentence for the level A offense to vacate the judgment of conviction if the level A offense was committed as a direct result of the person having been a victim of trafficking." 18 U.S.C. § 3771A(b)(1)(A).

The Court may grant the motion if it finds, by a preponderance of the evidence, that (i) "the movant was convicted of a level A offense," and (ii) "the participation in the level A offense by the movant was a direct result of the movant having been a victim of trafficking." *Id.* § 3771A(b)(4)(A). If the motion is granted, the Court "shall immediately" vacate the conviction for cause, enter a judgment of acquittal, and order all references to the arrest, the proceedings, and their results expunged from official records. *Id.* §

3771A(c)(1). The vacated conviction "shall not be regarded as a conviction under Federal law," and the movant is restored to the status she occupied before her arrest. *Id.* § 3771A(c)(3).

Ms. Marshall intends to file such a motion at the time of sentencing. The Act applies to convictions entered before, on, or after its enactment. *Id.* § 3771A(i).

**A. Count 7 Is a Level A Offense.**

A "level A offense" is "a Federal offense that is not a violent crime." *Id.* § 3771A(a)(5). The Act defines "violent crime" by reference only to the elements clause of 18 U.S.C. § 16(a). *Id.* § 3771A(a)(8). Section 16(a) covers an offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Congress did not incorporate the residual clause of § 16(b).

Conspiracy to commit Hobbs Act extortion does not satisfy § 16(a). The offense requires only an agreement and knowing participation in it; no element requires the use, attempted use, or threatened use of physical force. *See United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019) (construing the identically worded elements clause of 18 U.S.C. § 924(c)(3)(A)). Moreover, the object of the conspiracy, extortion, may itself be accomplished through the wrongful use of fear, including fear of economic or reputational harm, without any force at all. *See* 18 U.S.C. § 1951(b)(2). Count 7 is therefore a level A offense.

The open counts against Ms. Marshall, which the government will move to dismiss at sentencing (Plea Agreement ¶ 20), will likewise be subject to expungement of the associated arrest records under § 3771A(b)(1)(B)–(C).

**B. The Record Supports a Finding That Ms. Marshall Was a Victim of Trafficking.**

The Act adopts the definition of "victim of trafficking" in § 103 of the Trafficking Victims Protection Act of 2000, 22 U.S.C. § 7102. 18 U.S.C. § 3771A(a)(7). Under that provision, as amended by § 7 of the Act, a "victim of trafficking" is a person subjected to an act or practice described in § 7102(11) ("severe forms of trafficking in persons") or § 7102(12) ("sex trafficking"). *See* Pub. L. No. 119-73, § 7. "Sex trafficking" means "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act." 22 U.S.C. § 7102(12). "Severe forms of trafficking in persons" include "sex trafficking in which a commercial sex act is induced by force, fraud, or coercion." *Id.* § 7102(11)(A).

Because the definition of "victim of trafficking" reaches persons subjected to "sex trafficking," Ms. Marshall need not show that force, fraud, or coercion was used against her. It is enough that she was recruited, harbored, provided, or solicited for the purpose of a commercial sex act—though, as set out below, the record reflects coercive circumstances as well.

The facts establish that showing. Co-defendant Lawrence Colbert—who is charged in the Superseding Indictment with multiple sex trafficking offenses under 18

U.S.C. §§ 1591 and 1594(c)—recruited Ms. Marshall into "an extortion enterprise he headed" and "would also advertise [her] to prospective [commercial sex] customers." (Plea Agreement ¶ 4(b); Dkt. 85.) Ms. Marshall's own role is stipulated to be minor. (*Id.* ¶ 4(j).) At the time, she was a young woman with no criminal record who had recently left an abusive relationship and a domestic violence shelter. Since her release, she has been enrolled in a two-year residential therapeutic program specifically for victims of human trafficking.

The Act also prescribes the evidence the Court must consider. In determining whether the movant is a victim of trafficking, the Court "shall consider an affidavit or sworn testimony of an anti-human trafficking service provider or clinician." 18 U.S.C. § 3771A(b)(5)(A)(i). Such an affidavit or testimony "shall be sufficient evidence to vacate a conviction" if the Court finds it credible and "no other evidence is readily available." *Id.* § 3771A(b)(5)(B). Ms. Marshall anticipates submitting such evidence from Project Mona's House and from her treating clinicians at Horizon Health Services. No other person need be convicted before she may file. *Id.* § 3771A(b)(6).

**C. The Anticipated Motion Weighs Heavily in Favor of Continued Release.**

The pending motion bears directly on the release question in three ways.

First, it would be anomalous to detain Ms. Marshall pending sentencing on a conviction that Congress has expressly made subject to vacatur and expungement. If her

motion succeeds, the conviction "shall not be regarded as a conviction under Federal law." *Id.* § 3771A(c)(3). Any detention imposed in the interim could not be undone.

Second, the Act places the evidence of Ms. Marshall's victimization in the hands of anti-trafficking service providers and clinicians. *Id.* § 3771A(b)(5)(A)(i). Those are the very providers whose care detention would interrupt. That is a further "exceptional reason" under § 3145(c) why detention would not be appropriate.

Third, Congress has made clear that a trafficking victim's status is relevant to punishment. A defendant who does not assert the Act's trafficking-based duress defense may still assert, "as a mitigating factor, at sentencing," that she "was a victim of trafficking and committed the offense under duress." 18 U.S.C. § 28(d). This reinforces the conclusion that a non-carceral sentence—which the government does not oppose—is the likely outcome here.

Finally, Ms. Marshall has every reason to remain compliant and to appear as required: the relief the Act offers depends on her continued engagement with the Court and with the providers who are treating her.

## <u>CONCLUSION</u>

For the foregoing reasons, Ms. Marshall respectfully requests that the Court continue her release pending sentencing on the conditions previously imposed, including her continued residence at Project Mona's House and her continued participation in

mental health treatment at Horizon Health Services, together with any additional conditions the Court deems appropriate.

Dated: Buffalo, New York
October 26, 2026

Respectfully submitted,

/s/ Eric M. Soehnlein
ERIC M. SOEHNLEIN, ESQ.
Soehnlein Law PLLC
*Attorney for Defendant Serenity Marshall*
135 Delaware Avenue, Suite 406
Buffalo, New York 14202
(716) 771-9092
eric@soehnleinlaw.com